663 A.2d 66

**Burton A. WARD**

v.

**DEPARTMENT OF PUBLIC SAFETY &
CORRECTIONAL SERVICES et al.**

**No. 10, Sept. Term, 1995.**

Court of Appeals of Maryland.

Aug. 21, 1995.

**344**

Christyne L. Neff (Francis J. Collins, Kahn, Smith & Collins, P.A., on brief), Baltimore, for appellant.

Andrew H. Baida, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen.; Stuart M. Nathan, Asst. Atty. Gen.; L. Kristine Hoffman, Staff Atty., on brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

MURPHY, Chief Judge.

In this case we review the judgment of the Circuit Court for Wicomico County, affirming the decision of the State's Secretary of Personnel, to suspend and, thereafter, to remove a correctional officer from his public employment based on multiple disciplinary infractions.

## I.

### A.

The primary issue before us is the meaning of the Division of Correction's Regulation (DCR) 50–2, entitled "Standards of Conduct and Internal Administrative Disciplinary Process." Part III.E of the regulation establishes three categories of disciplinary infractions, with category one infractions being

the least severe, and category three infractions being the most severe. Applicable to this case are category two infractions, which include "[f]ailure to report for duty" and "[f]ailure to report receipt of criminal summons." *Id.* at parts III.E.2.a.3 & 18. The regulation provides: "Second category infractions shall result in discipline according to the following schedule and shall be dependent on the number of frequencies within the twelve months prior to the subject offense[:] 1) 1–3 day suspension[;] 2) 5–10 day suspension[;] 3) [d]ischarge." *Id.* at part III.E.2.b. The regulation, however, also provides: "Failure to report shall result in a reprimand on the first occurrence. Subsequent occurrences shall be disciplined as category two infractions." *Id.* at part III.E.2.c.

### B.

An employee may "appeal" disciplinary suspensions and charges for removal to the Office of Administrative Hearings. Code of Maryland Regulations (COMAR) 06.01.01.57, 06.01.01.61. An administrative law judge from that office conducts a hearing and issues a "written proposal for decision," which is subject to approval by the Secretary of Personnel. *Id.* If the employee is dissatisfied with the proposed decision, the employee may file exceptions with the Secretary and present oral argument. *Id.* The Secretary (or a designee of the Secretary) issues a final decision, which is subject to judicial review in a circuit court pursuant to the Administrative Procedure Act. *Id.;* Maryland Code (1984, 1993 Repl. Vol., 1994 Cum.Supp.), § 10–222 of the State Government Article.

When exercising such judicial review, a circuit court may:

"(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

§ 10–222(h) of the State Government Article. "A court's role is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994).

## II.

Officer Burton A. Ward was a correctional officer at Poplar Hill Pre–Release Unit from 1983 until his removal effective November 23, 1993. In this position, he was a classified service employee.[1] His disciplinary troubles began when a Maryland State Police Officer served him with a criminal summons on December 16, 1991. Ward did not notify any superior officer until December 19, 1991, despite the fact that his next scheduled work day was before that date. Part II.B.10 of regulation 50–2 requires: "An employee arrested or criminally summoned shall notify or cause to be notified, in writing, his/her Managing Officer via the immediate supervisor on his/her next scheduled work day, but in no case later than five (5) days following the employee's arrest or criminal summons." Ward attempted to explain the delay by stating that he believed he had five days to notify his Managing

---

1. The General Assembly has prescribed that a classified service employee who has completed probation may be removed "only for cause." Maryland Code (1993, 1994 Repl.Vol.), § 9–202 of the State Personnel and Pensions Article. The General Assembly has delegated to the Secretary of Personnel the responsibility to "adopt regulations that prescribe what may constitute cause for removal." *Id.* § 9–203.

Officer. Nevertheless, he received a five day suspension for this infraction.[2]

On June 2, 1992, Ward failed to report for his shift, which was scheduled to start at 6:00 a.m. He telephoned Lieutenant Gerald W. Long at about 6:06 a.m. to state that he would not be reporting to work that day because he was sick. Part II.U.1 of regulation 50-2 requires: "An employee shall report to work or assigned duties at the prescribed time to ensure safe and efficient operations. An employee who will be late or absent shall contact his/her supervisor as previously established by management directive." According to the established procedure, he should have notified his supervisor of this by at least 5:30 a.m. He received a reprimand for this infraction.

On August 21, 1992, Ward failed to report for duty. He had taken some medication which caused him to oversleep. He never telephoned to tell his supervisor that he would not be able to work that day. He received a five day suspension for this infraction.

On November 13, 1992, Ward failed to report for duty because he reportedly had difficulty with his car. His shift was scheduled to start at 5:00 a.m., but he did not call to inform his supervisor that he could not work that day until 5:30 a.m. According to established procedure, he should have called no later that 4:30 a.m. For this infraction, he received a five day suspension.

George Kaloroumakis, the facility administrator, informed Ward of this suspension on November 20, 1992. At the same time, Kaloroumakis informed Ward that charges for removal were going to be filed against him with the Secretary of Personnel. These charges, filed on December 2, 1992, cited

---

2. Ward received a five day suspension, rather than the "1–3 day suspension" listed first in the discipline schedule, because this was his second category two infraction within a twelve month period. He had received a three day suspension for a previous infraction on July 22, 1991.

the four disciplinary infractions described above as the reasons for seeking removal.

Ward appealed the reprimand, suspensions and charges for removal to the Office of Administrative Hearings. The appeals were consolidated and the hearing occurred on June 28, 1993. On September 10, 1993, the administrative law judge filed his proposed decisions, affirming all of the disciplinary sanctions, including the charges for removal.[3] On November 9, 1993, the Secretary of Personnel, through a designee, adopted the proposals of the administrative law judge, upholding the three suspensions and ordering "that Mr. Ward be separated from his Correctional Officer II position at the Poplar Hill Pre–Release Unit effective the close of business on November 23, 1993."

Ward filed actions for judicial review of the reprimand, suspensions and removal in the Circuit Court for Wicomico County. The cases were consolidated for a hearing on June 3, 1994. The judge rejected a double jeopardy argument and, ruling from the bench, upheld the disciplinary sanctions, including the removal. Ward appealed to the Court of Special Appeals. While the case was pending there, we granted certiorari on our own motion to consider the issues raised.

### III.

Ward argues before us that the Secretary of Personnel cannot suspend him for an incident and then file charges for removal based on "exactly the same incident." This, he maintains, runs afoul of a principle he calls administrative double jeopardy. In his brief, he asserted that this principle is rooted in the principles of double jeopardy embodied in the Fifth Amendment to the United States Constitution. At oral argument, however, Ward abandoned the Constitution as the basis for his argument. Nevertheless, for the sake of clarity, we will explain why we cannot accept this argument.

---

3. The administrative law judge's decision concerning the reprimand was a final decision, rather than a proposed decision.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This clause not only protects against multiple prosecutions for the same offense, but also protects against multiple punishments. *U.S. v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989); *State v. Griffiths,* 338 Md. 485, 659 A.2d 876 (1995). The United States Supreme Court has determined that, for the purposes of a multiple punishments inquiry, the government can impose punishment, not only in a "criminal" proceeding, but also in a "civil" proceeding. Indeed, "the labels 'criminal' and 'civil' are not of paramount importance." *Halper, supra,* 490 U.S. at 447, 109 S.Ct. at 1901. Rather, "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." *Id.* at 448, 109 S.Ct. at 1901. If the purpose of the penalty is retribution or deterrence, it is punishment. If, however, the purpose of the penalty is remedial, it is not punishment. Accordingly, the United States Supreme Court has stated that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id. See also Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

Applying this test, we hold that the disciplinary sanctions imposed under regulation 50–2 are remedial in nature, not punitive. The Division of Correction, like any employer, must maintain control over its employees. To this end, the Division has established standards of conduct and published them to its employees. The standards would have no meaning, force or effect if there were no penalty for their violation. Thus, the Division has established a system of progressive discipline. Common sense dictates that this discipline is imposed to ensure that employees adhere to the established standards of conduct. Indeed, the foreword to the regulation

states that "discipline shall be progressive in nature and, in combination with specific training, shall aim at correcting inappropriate employee behavior." Because the discipline is not imposed for the purpose of punishment, the principles of double jeopardy simply do not apply.

This conclusion is supported by *Attorney Griev. Comm'n v. Andresen*, 281 Md. 152, 379 A.2d 159 (1977), in which we held that "'disbarment is intended not as punishment, but as protection to the public.'" *Id.* at 155, 379 A.2d 159 (quoting *Maryland St. Bar Ass'n v. Sugarman*, 273 Md. 306, 318, 329 A.2d 1 (1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1397, 43 L.Ed.2d 654 (1975)). Accordingly, we held that disbarment was not punishment for the purposes of double jeopardy. *Id.*

Ward further contends that the principle of administrative double jeopardy is grounded in more general principles of administrative law. In this regard, he makes two arguments—first, that his removal was arbitrary and capricious, and, second, that his removal violated the Agency's own regulations. We cannot agree with either argument.[4] We do hold, however, that Ward's third five-day suspension was not authorized by the regulations.

In interpreting regulations, we "generally employ the same rules applicable to the interpretation of statutes." *Chesapeake v. Comptroller*, 331 Md. 428, 440, 628 A.2d 234 (1993). The goal of statutory construction is to determine and effectuate the Legislature's intention. *E.g., Oaks v. Connors*, 339 Md. 24, 660 A.2d 423 (1995); *Baltimore v. Cassidy*, 338 Md. 88, 93, 656 A.2d 757 (1995). Legislative intent is indicated primarily by the words of the provision. *Tidewater v. Mayor of Havre de Grace*, 337 Md. 338, 345, 653 A.2d 468 (1995). In examining the language, however, we cannot view individual

---

**4.** Ward relies heavily on *Burton v. Civil Service Commission*, 76 Ill.2d 522, 31 Ill.Dec. 791, 794, 394 N.E.2d 1168, 1171 (1979), in which the Supreme Court of Illinois held that the agency could not both suspend and remove an employee for the same misconduct unless the agency suspended the employee pending removal. The holding, however, was entirely based on the court's interpretation of the Illinois personnel rules and never mentioned double jeopardy.

provisions in isolation, but must look at the entire statutory scheme. *Outmezguine v. State,* 335 Md. 20, 41, 641 A.2d 870 (1994). Also, we must consider the objectives and purpose of the statute. *Blaine v. Blaine,* 336 Md. 49, 69, 646 A.2d 413 (1994). Moreover, "we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994).

As we said above, the regulation states: "Second category infractions shall result in discipline according to the following schedule and shall be dependent on the number of frequencies within the twelve months prior to the subject offense[:] 1) 1–3 day suspension[;] 2) 5–10 day suspension[;] 3) [d]ischarge." The words of this provision are unambiguous. They clearly indicate the discipline to be imposed for the first, second, and third infraction within a twelve month period. Thus, when an employee commits a second category two offense within a twelve month period, the discipline should be a "5–10 day suspension." Likewise, when an employee commits a third such offense within a twelve month period, the discipline imposed should be discharge.

By twice using the word, "shall," the regulation makes these disciplinary sanctions mandatory. *See In re Adoption No. A91–71A,* 334 Md. 538, 559 n. 5, 640 A.2d 1085 (1994) ("It is a longstanding principle of statutory construction that the word 'shall' is mandatory, unless the context in which it is used indicates otherwise."); *Inner Harbor v. Myers,* 321 Md. 363, 380, 582 A.2d 1244 (1990) ("On many occasions we have stated that the word 'shall' is presumed to have the mandatory meaning under principles of statutory construction. Unless the legislature suggests otherwise, 'shall' denotes an imperative obligation."). The regulation gives the management of the institution the discretion, however, to reduce or forego the disciplinary sanction if "in the judgment of management mitigating circumstances exist and can be substantially documented." DCR 50–2.III.D.

According to the schedule of progressive discipline, when Ward committed his third category two infraction

within a twelve month period, the discipline imposed should have been discharge (or filing of charges for removal). Instead, Ward received a five day suspension *and* charges for removal were filed against him. This imposition of a five day suspension was inconsistent with the system of discipline established by the regulation.[5] Even imposition of the suspension alone, without the simultaneous filing of charges for removal, would have been inconsistent with the regulation where, as here, the management of the facility found no mitigating circumstances sufficient to reduce the discipline.

Accordingly, we reverse the judgment of the circuit court as to the third five day suspension. We conclude that the Agency's imposition of that suspension was not authorized by the regulation under which it was purportedly imposed. The other actions taken by the Agency, including the removal of Ward from his position, were undertaken in accordance with the regulation. Therefore, we affirm the circuit court's judgment that those actions were proper.

*JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE ADMINISTRATIVE AGENCY FOR APPROPRIATE ACTION CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE HALF BY THE APPELLANT AND ONE HALF BY THE APPELLEE.*

---

**5.** At the hearing, Kaloroumakis, the facility administrator, explained the reasoning behind the Agency's decision to both suspend Ward and file charges for removal as a result of the November 13, 1992 incident. He stated that the suspension was necessary to place the infraction on Ward's permanent record in the event that the charges for removal were overturned on appeal. As we see it, however, the administrator's concern is unwarranted. For the charges for removal to be entirely overturned on appeal, the Secretary must determine that there is insufficient evidence of the infraction or that it does not warrant discipline; in such cases, there is no reason for the infraction to appear on the employee's permanent record. Alternatively, the Secretary could decide that, because of mitigating circumstances, the infraction warrants a discipline less severe than removal; in such cases, the infraction would still appear on the employee's record.