Dear Senator Van Hollen:
You have requested our opinion whether funds from the Transportation Trust Fund may be used as a grant to reimburse the Washington Redskins or any other party for the construction of parking lots or other on-site improvements for the proposed Redskins Stadium.
Jack Kent Cooke, Inc., the owner of the Washington Redskins, plans to build a new football stadium on a tract of land in Prince George's County known as the Wilson Farm property.[1] As part of the inducement for Cooke to build the stadium, the State has agreed in principle to pay for certain on-site infrastructure, including parking lot construction.[2] Your question is whether the Transportation Trust Fund may be used to fund a grant for this purpose.
Our opinion is as follows:
1. Subject to any restriction that might appear in the budget bill, the Secretary of Transportation has authority to use Transportation Trust Fund money for a grant to the Redskins or another party for the construction of on-site roadways and related infrastructure changes, like the rerouting of a sewer line required by the road construction.
2. Whatever the budget bill might provide, the Secretary does not have authority to use Trust Fund money for a grant to the Redskins or another party for the construction of on-site infrastructure, like water or sewer lines, that is needed because of the stadium itself, not because of road construction.
3. The Secretary would have authority to provide a grant for the construction of on-site parking lots if the budget bill for fiscal year 1997 expressly authorizes that use of Trust Fund money.
 I Secretary of Transportation's Grant-Making Authority
The Transportation Trust Fund may be used by the Department of Transportation, after payment of debt service, "for any lawful purpose related to the exercise of its rights, powers, duties, and obligations." § 3-216(d)(1) of the Transportation ("TR") Article, Maryland Code. Under TR § 2-103(i)(2), the Secretary of Transportation has the authority to make grants "for any transportation related purpose":
 To the extent permitted by the State budget, the Secretary may make grants-in-aid to:
 (i) Any governmental transportation agency in this State, including any county agency, bi-county agency, multi-jurisdiction agency, or municipal agency; or
 (ii) Any other person for any transportation related purpose.[3]
The phrase "transportation related purpose" is not defined; neither is the term "transportation." The language has not been construed in any reported Maryland case. Nor has it been interpreted by regulation or adjudicatory decision.
The text is not illuminated by the legislative history. When the Department of Transportation was created in 1970, the Secretary was granted authority to "apply for and receive . . . grants in aid or gifts to be used for transportation related purposes." Former Article 41, § 208(m). See Chapter 526 of the Laws of Maryland 1970. At the time, the Secretary's authority to make grants was limited to "any governmental transportation agency within the State of Maryland."
In 1972, the Secretary's grant-making authority was expanded beyond governmental transportation agencies. As a result of Chapter 17 of the Laws of Maryland 1972, the Secretary was additionally authorized to make grants "to any person, corporation, association, or other entity for any transportation related purpose." Former Article 41, § 208(g). The 1977 enactment of TR § 2-103(i) carried forward this language without substantive change or elaboration. See Chapter 13 of the Laws of Maryland 1977.
If the term "transportation" were construed with primary regard for its broad statutory context, the term would be taken to refer to the goals and activities of the various components of the Department of Transportation. The Department is the spine of an organization that, through its modal administrations, renders particular transportation services: mass transit, highways, airport services, the Port of Baltimore, and the like. See TR § 2-107. "Transportation," in other words, is what the parts of the Department do, and what they do is provide the means by which people and goods move from place to place. This concept of "transportation" dovetails with the everyday definition of the term. See Random House Dictionary of the English Language 2012 (2d ed. 1987); Black's Law Dictionary 1499 (6th ed. 1990).
Under the everyday definition, and under any other conceivable reading of the term "transportation," at least one component of the on-site infrastructure construction — the construction of roadways — is unquestionably an object for which the Secretary's grants may be provided. A grant would also be "transportation related" if it covered the cost of infrastructure work caused by road construction — if, for example, storm drains or sewer lines had to be relocated.
Conversely, the Secretary may not provide a grant for infrastructure work that is needed, not because of road construction, but because a stadium will be built on the site in place of farm buildings. Presumably 78,000 people will impose quite a demand on water and sewer lines; if the existing lines are inadequate, they will need to be upgraded. That is not a "transportation related purpose" and may not be the object of a grant from the Secretary.
Between these clear categories of what is allowed and what is not fall parking lots. On the one hand, no component of the Department is responsible for parking lots (except, of course, in connection with a direct transportation service, like a park-and-ride lot for mass transit). If "transportation related purpose" were construed to mean only purposes related to the mission of the Department's administrations, a grant for parking lots to accommodate fans at a football stadium would not be permissible.
On the other hand, we cannot say that the term "transportation related purpose" bears no meaning other than this relatively narrow one. To the contrary: Out-of-state authority suggests that the provision of parking can itself fairly be regarded as a "transportation related purpose," because access to parking reduces potentially hazardous road congestion.
In Miller v. Commonwealth, 498 A.2d 1370 (Pa.Cmwlth. 1985), the Pennsylvania Department of Transportation had condemned some property for a highway easement. When the highway was delayed, the property was leased to a private party for use as a parking lot. Later, when the original highway design was scaled down and the property was no longer to be part of a highway interchange, the property was planned to be used as a parking garage adjacent to the highway. The landowner objected to the taking for this purpose, contending that the parking garage was not a permissible objective of condemnation under a statute authorizing condemnation for "transportation purposes." The court rejected this argument, holding that the term "transportation purpose" was broad enough to include transportation-related activities, like the parking garage, "which was designed as a integral part of the highway project and was intended to mitigate the loss of existing surface parking and minimize traffic congestion." 498 A.2d at 1374. Seealso Commonwealth v. E-Z Parks, Inc., 620 A.2d 712, 719-20 (Pa. Cmwlth. 1993) (Pennsylvania Department of Transportation had discretion to conclude that leased land for a parking garage was a "related transportation purpose"); E-Z Parks, Inc. v. Larson,498 A.2d 1364, 1368 (Pa.Cmwlth. 1985), aff'd, 503 A.2d 931 (Pa. 1986) (public parking was a "highway related use").
These Pennsylvania cases, with their broad view of "transportation," are not unique. Other courts, in other contexts, have taken a similar view of the term. For example, inKennedy v. Aerr Co., 833 P.2d 807 (Colo.App. 1991), the issue was whether a "transportation" exclusion in an insurance policy excused an insurer from liability for an accident caused by a parked piece of construction equipment. The equipment spilled some oil while being loaded onto a trailer, and the plaintiff was injured when her car skidded on a patch of the oil. The court held that the "transportation" exclusion applied: "Transportation includes a process that is not limited to a moving vehicle, but also includes the activities (processes) originating from or flowing from transportation." 833 P.2d at 809. Parking a vehicle is surely an activity "originating from or flowing from transportation."
To summarize, the phrase "transportation related purpose" is ambiguous. A conservative interpretation would limit parking facility grants to those parking facilities that are directly related to a programmatic mission of a component within the Department of Transportation. A more expansive interpretation would allow a grant for a parking facility that the Secretary might determine to be needed to reduce the risk of gridlock on roads near the stadium as fans park where they can.
In our view, the better approach to resolving the matter is to construe this ambiguous statute in light of another legislative enactment: the annual budget bill.
 II Effect of Budget Bill Language
The annual budget bill is a law like any other law. To be sure, it has certain unique features, deprived from the requirements of Article III, § 52 of the Constitution, the Executive Budget Amendment. Nevertheless, the budget bill is subject to the customary principles of statutory construction.
One such principle is that laws on the same subject are to be read together, to the extent reasonably possible, so as to create an integrated body of law. See, e.g., Haskell v. Carey,294 Md. 550, 556, 451 A.2d 658. "[L]egislative intent may be gleaned from a statute's `relationship to earlier and subsequent legislation.'"In re Douglas P., 333 Md. 387, 393, 635 A.2d 427 (1994) (quotingKaczorowski v. City of Baltimore, 309 Md. 505, 515, 525 A.2d 628
(1987)) (emphasis added). This principle would seem especially apt here, given that TR § 2-103(i)(2) expressly recognizes the role of the annual budget bill in shaping grant-making practice: The statute conditions the Secretary's grant-making authority "[t]o the extent permitted by the State budget . . . ." As the Court of Appeals recently observed, "In examining the language, . . . we cannot view individual provisions in isolation, but must look at the entire statutory scheme." Ward v. Department of Public Safety Correctional Services, 339 Md. 343, 351-52,663 A.2d 66 (1995).
For the current fiscal year, and for the past several years, the budget of the Department of Transportation has contained the following condition:
 It is the intent of the General Assembly that funds dedicated to the Transportation Trust Fund shall be applied to purposes bearing direct relation to the State Transportation program, unless directed otherwise by legislation. To implement this intent for the Department of Transportation in FY 1996, no commitment of funds in excess of $250,000 may be made nor may such an amount be transferred, by budget amendment or otherwise, for any project or purpose not normally arising in connection with the ordinary ongoing operation of the Department and not contemplated in the budget approved or the last published Consolidated Transportation Program without review and comment by the budget committees.[4]
This language, applied to TR § 2-103(i)(2), would prevent a grant for a parking lot for the proposed Redskins Stadium "without review and comment by the budget committees."[5] The statement of intent in the first sentence of the budget condition, if applied rigorously by the budget committees, would rule out such a grant, for it cannot be said that the parking lot bears "direct relation to the State Transportation program." Yet, the very existence of this budget restriction implies that the statutory authority of the Secretary is broader. If the statutory authority were narrow, the budget condition might not be needed.
We understand that the Administration is considering language in a supplemental budget bill that would retain the prior condition but add language expressly authorizing Transportation Trust Fund money to be used for the construction of a parking facility at the proposed Redskins Stadium. In all likelihood, the language would recognize the special problem of traffic congestion that would be posed by a crowd at a football game if parking were not adequate at the stadium itself.
In our view, such budget bill language would resolve the issue squarely in favor of recognizing that a grant for the parking lot is permitted by the statute. Of course, budget bill language cannot authorize a program to be "implemented in a manner contrary to statute . . . ." Bayne v. Secretary of State,283 Md. 560, 574, 392 A.2d 67 (1978). A budget bill is not a means by which the General Assembly may enlarge the scope of a statute. So, for example, the budget bill could not authorize Trust Fund money to be used for on-site water and sewer line construction not caused by road construction.
But it is not impermissible "legislating in the budget" for the budget bill to specify a use of funds that can reasonably be encompassed by the ambiguous term "transportation related purpose." Because the statute itself recognizes that grants are to be made "to the extent permitted by the State budget," there is all the more reason to harmonize the statute with an interpretation of it in the budget bill.[6]
 III Conclusion
In summary, it is our opinion that Transportation Trust Fund money may be used for a grant for on-site road construction and related infrastructure work at the proposed Redskin Stadium. A grant may also be made for parking lot construction if that use is authorized in the budget bill. Trust Fund money may not be used for a grant for on-site infrastructure work needed for reasons other than road construction.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions Advice
[1] The tract is now owned by the Maryland-National Capital Park and Planning Commission.
[2] The agreements of the various parties are reflected in a Letter of Intent dated December 3, 1995. The Letter of Intent is not itself legally binding. The parties will be bound only after the deal is embodied in a memorandum of understanding.
[3] Because of the broad wording "[a]ny other person," the Secretary unquestionably may provide a grant to a private entity.
[4] The Consolidated Transportation Program is an annual list of current and future projects. See TR § 2-103.1(c).
[5] The Counsel to the Department of Transportation earlier gave the Secretary of Transportation precisely this advice in a memorandum dated November 9, 1995. He concluded that, given the language contained in the budget bill, the Department should construe the term "transportation related" in a conservative manner, so as not to permit grants to be utilized for the construction of a parking lot. Memorandum from Assistant Attorney General Edward R. K. Hargadon to Secretary David L. Winstead (November 9, 1995).
[6] Indeed, if the budget bill were enacted with language authorizing the use of Trust Fund money for stadium parking lots, a court would likely favor a broad interpretation of the statute, to avoid declaring the budget bill language unconstitutional. A construction of a statute that avoids a constitutional problem is to be preferred. See, e.g., Yangming Marine Transport Corp. v.Revon Products U.S.A. Inc, 311 Md. 496, 536 A.2d 633 (1988).