678 A.2d 621

**MONTGOMERY COUNTY, Maryland,**

v.

**Linda A. KRIEGER.**

**No. 1713, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

July 1, 1996.

718

Bruce R. Sherman, Sr. Asst. County Atty. (Charles W. Thompson, Jr., County Atty. and Frank E. Couper, Asst. County Atty., on the brief), Rockville, for Appellant.

Gary L. Crawford (Debelius, Clifford, Debelius, Crawford & Bonifant, Chtd., on the brief), Gaithersburg, for Appellee.

Argued before BISHOP and DAVIS, JJ., and PAUL E. ALPERT (retired), specially assigned.

DAVIS, Judge.

This is an appeal from an August 21, 1995 Order of the Circuit Court for Montgomery County reversing a decision of the Chief of the Montgomery County Police Department to punish administratively appellee Linda A. Krieger, a Montgomery County police officer. Although appellant Montgomery County (County) has presented us with three questions for review, we believe that the resolution of this appeal essentially boils down to two questions, which we restate as follows:

I. Was the administrative disciplinary action taken against appellee in violation of principles of double jeopardy?

II. Was the administrative disciplinary action taken against appellee in violation of Maryland's Law Enforcement Officers' Bill of Rights [LEOBR]? Responding in the negative to these questions, we reverse the judgment of the circuit court.

## FACTS

The facts are largely undisputed. On October 3, 1994, appellee fueled her police cruiser at the fuel site of the Seven Locks Maintenance Facility—a county-owned facility. While she was pumping gasoline into the cruiser, appellee heard a radio dispatch for another motor unit to respond to an accident involving property damage. Appellee notified the dispatcher that she would assist that unit with the call and then continued to fuel the cruiser. Shortly thereafter, the radio dispatch was upgraded to a personal injury accident authorizing a "code 3 emergency" response.[1] In appellee's words, the following then happened:

> I then left the gas pumps abruptly at that point because I had to go red light and siren to the accident. At that point I must of heard a noise and looked in my rear view mirror and I saw the gas pump nozzle and hose fly up in the air and obviously then I stopped and went back and realized that I had left the pump action in my car before I took off.

As a result of pulling away without removing the fuel hose nozzle from her car, the nozzle was damaged. The grand total for repairing the nozzle was $414.

Later that day, appellee reported the incident to her supervisor, Corporal Paul Sterling, and Sterling issued a Memorandum of Notification to appellee advising her that certain documents relating to the incident would be placed in her personnel file. These documents were: (1) a "Motor Vehicle Accident or Loss Notice," (2) a Supervisor's Incident Investigation Report (SIIR), and (3) a Form 242 Internal Investigation Notification (first Form 242).[2] Appellee signed the

---

1. The record indicates that a "code 3" response means an emergency response requiring the officer to respond immediately with lights and sirens activated.

2. The first Form 242 states:

In compliance with the Law Enforcement Officers' Bill of Rights, [MD. ANN CODE art. 27, §§ 727–734D] and the Department Directive on the disciplinary process, Function Code 301, you are hereby

Memorandum of Notification, the SIIR, and the Form 242. Appellee handwrote the words "under duress" immediately below her signatures on each of these documents.

Of particular interest in this case is the SIIR dated October 3, 1994. The SIIR is a County government form, the heading of which states: "Montgomery County Government Department of Finance ● Division of Risk Management." The record indicates that the SIIR is not restricted to police use. The SIIR is evidently used for documenting incidents involving damage to County property or injury to County personnel. In this case, it appears that both Sterling and appellee recorded on the SIIR all of the relevant information pertaining to the damage to the fuel hose nozzle. At a section of the SIIR calling for a description of the incident in the "Employee's Words," appellee provided a handwritten explanation of the incident. Appellee signed her name "under duress" beneath this explanation. In another section calling for the supervisor to explain the steps "taken to prevent a recurrence," Sterling handwrote the word "Counseled."

The record reflects that the October 3, 1994 incident was not the first time appellee drove away without removing the fuel hose nozzle from her cruiser. In this regard, the record contains a SIIR dated January 20, 1994, which reveals that appellee accidently failed to remove the fuel nozzle from her vehicle before pulling away from the pump station on January 20, 1994. As with the October 3, 1994 SIIR, the January 20, 1994 SIIR indicates that appellee was counselled to prevent a recurrence of the accident.

---

notified that you are the subject of an internal investigation being conducted by this Department.

The nature of the investigation is: *damage done to fuel pump nozzle @ Seven Locks Maintenance Facility, 1283 Seven Locks Road, involving Stock 395.*

(Italicized indicates Sterling's handwriting). Sterling is designated as the "officer conducting the investigation." At the bottom portion of the form is a section entitled "Notice of Rights." In this section, the officer is informed of "the right to the presence and assistance of a responsible representative or attorney of your choice during questioning."

On October 11, 1994, appellee received another Form 242 (second Form 242) regarding the nozzle incident. On this form, Lieutenant David Buchanan is designated as the investigating officer. The form further indicates that the "nature of the investigation is: *FACTS AND CIRCUMSTANCES SURROUNDING THE REFUELING OF YOUR POLICE VEHICLE AND DAMAGE DONE TO THE FUEL PUMP NOZZLE/VEHICLE AT SEVEN LOCKS GARAGE REFUELING STATION ON OCTOBER 3, 1994.*" (Italicized indicates Buchanan's handwriting). Appellee signed the second Form 242, but did not indicate that her signature was "under duress." In all other respects, the second Form 242 is identical to the first Form 242.

On November 2, 1994, Buchanan conducted a tape recorded interrogation of appellee. A Fraternal Order of Police representative represented appellee during the interrogation. During the interrogation, the following exchange between Buchanan and appellee's representative occurred:

BUCHANAN: The first [Form] 242 that I have here was dated 10/3/94 and it appears to be from Cpl. Paul Sterling of the Rockville District, Shift 3.

REP.: And this [Form] 242 is investigating the events, what transpired with [appellee] reference a gas pump and her cruiser at Seven Locks?

BUCHANAN: That's correct.

REP.: So it's the same incident in which you are investigating that had already been investigated by Cpl. Sterling?

BUCHANAN: At least investigated enough for this SIIR, that is correct.

REP.: It was investigated by Cpl. Sterling. It is my understanding and we have written documentation that Cpl. Sterling orally admonished [appellee]. There is ... documentation in the SIIR report that indicates that she was counselled, it's inserted in her personnel file, is a form of punishment and it is our belief ... [that] this investigation being continued by you is a violation of [LEOBR]. . . .

BUCHANAN: I understand your objection to this. I'm looking at the SIIR dated 10/3/94, it does indicate that she was counselled. Counselling is not a form of punishment[.] [T]herefore, there has been no punishment ... so I would disagree with you in that area[.] [H]enceforth the investigation will proceed.

Ultimately, on December 7, 1994, Major Carol A. Mehrling, the Acting Chief of Police, issued a memorandum to appellee informing her that the allegations against her—namely that appellee failed to take proper care of equipment and failed to adhere to a departmental directive reminding officers to remove the gas nozzle before driving away—were sustained, and that her punishment would be a $400 fine. Refusing to accept this action, appellee requested an administrative hearing.

Accordingly, an Administrative Hearing Board (Board) was convened on March 24, 1995. The formal allegations against appellee for the Board's consideration were as follows:

*ALLEGATION 1 MAINTENANCE OF PROPERTY*

DEPARTMENT RULES, FUNCTION CODE 300, III, RULE 17 A. "EMPLOYEES WILL BE HELD ACCOUNTABLE FOR THE PROPER CARE, USE AND MAINTENANCE OF ALL UNIFORMS, VEHICLES, WEAPONS/FIREARMS, AND EQUIPMENT IN THEIR CHARGE."

*SPECIFICATION: TO WIT:* Department of Transportation alleges that on October 3, 1994, the respondent drove away from the Seven Locks refueling site without removing the gas nozzle from the vehicle tank, causing damage.

*ALLEGATION 2—CONFORMANCE TO LAW*

DEPARTMENT RULES, FUNCTION CODE 300, III, RULE 1. "EMPLOYEES ARE REQUIRED TO ADHERE TO DEPARTMENTAL RULES AND REGULATIONS, DEPARTMENTAL DIRECTIVES AND MEMORANDUMS [sic], MONTGOMERY COUNTY PERSONNEL REGULATIONS, COUNTY ADMINISTRATIVE PROCEDURES, EXECUTIVE ORDERS, MONTGOMERY

COUNTY CODE, AND TO CONFORM TO ALL LAWS APPLICABLE TO THE GENERAL PUBLIC."

*Reference:* Departmental Directive, Function Code 421.C, Vehicle Maintenance/Care, III K.4.

"ALL OFFICERS ARE REMINDED TO REMOVE THE GAS NOZZLE AND REPLACE IT BEFORE DRIVING AWAY FROM THE FUEL SITE."

*SPECIFICATION: TO WIT:* On October 3, 1994, respondent drove away from the Seven Locks refueling station without removing the gas nozzle from the vehicle tank, causing damage to the gas hose.

During the March 24, 1995 hearing, the Board heard testimony from various individuals and received evidence. Sterling was one of those who testified. With respect to his "Counseled" remark on the October 3, 1994 SIIR, Sterling explained, "I just spoke to her regarding the importance of paying more attention when fueling up her vehicle and leaving the pumps, to make an effort in the future to make sure that before she pulls away, that the nozzle is not in the filler spout on the vehicle."

Following the hearing, the Board issued a memorandum dated March 27, 1995 to Mehrling. This memorandum contains the Board's findings of fact and concludes that appellee was guilty of both allegations. Moreover, the Board recommended to Mehrling that disciplinary action should be in the form of "loss of pay in the amount of $150." Mehrling concurred with the Board's recommendation of a "fine of $150.00," and ordered appellee that the "fine must be paid no later than May 15, 1995, or Payroll Deduction papers executed by that date." We shall refer to Mehrling's decision as the Chief's final decision.

Unsatisfied with this outcome, appellee filed a petition for judicial review in the Circuit Court for Montgomery County. On appeal, appellee argued that the Chief's final decision must be reversed for essentially two reasons. First, appellee contended that the Chief was without legal authority to levy a fine against her as a form of punishment for this infraction. Second, appellee asserted that LEOBR and principles of

double jeopardy prohibit successive penalties for the same incident. In this regard, appellee maintained that the $150 fine was an illegal successive punishment—the first punishment allegedly being the counselling and placement of the aforementioned documentation in her personnel file.

The County responded that neither counselling nor the placement of the documentation in appellee's record constituted punishment as contemplated under LEOBR or the constitutional doctrine of double jeopardy. Additionally, the County argued that the Chief's final decision—whether considered to be the docking of pay or the levying of a fine—was legally authorized.

On August 10, 1995, the circuit court heard argument on the petition for review. At the conclusion of the hearing, the circuit court ruled that the placement of the documents in appellee's personnel file constituted punishment. As a result, the circuit court considered the events following the issuance of the initial Form 242 as a second prosecution and the $150 fine as a second penalty. This, according to the circuit court, "constitutes violation of the principles of double jeopardy, which I do believe apply to these types of actions." Accordingly, the circuit court reversed the Chief's final decision. In so doing, however, the circuit court expressly declined to determine whether the levying of a monetary fine was authorized.[3]

From the circuit court's order, the County appealed to this Court.

## DISCUSSION

Before addressing the merits of this appeal, it shall prove useful to present a brief overview of LEOBR. In *Maryland*

---

**3.** On this appeal, appellee does not argue—although she could have, *see Offutt v. Montgomery County Bd. of Educ.*, 285 Md. 557, 564 n. 4, 404 A.2d 281 (1979)—that the circuit court's reversal of the Chief's final decision should also be affirmed on the ground that the Chief was not legally authorized to levy a monetary fine. Indeed, neither party has addressed this issue in any significant way on this appeal. As a result, the issue is not before this Court.

*State Police v. Resh,* 65 Md.App. 167, 173–74, 499 A.2d 1303 (1985), we explained:

> The LEOBR was enacted in 1974 by the General Assembly to ensure that law enforcement officers were accorded certain procedural guarantees during any investigation and subsequent hearing which could result in a disciplinary sanction. Section 728(b) of the LEOBR provides: "Whenever a law-enforcement officer is under investigation or subjected to interrogation by a law-enforcement agency, for any reason which could lead to disciplinary action, demotion or dismissal, the investigation or interrogation shall be conducted under the following conditions...." This subsection of the statute then enumerates 14 conditions under which the interrogation or investigation shall be conducted. These include: restrictions as to the time, place, and length of the interrogation (subsections one, two and six); a requirement that the officer under investigation be given the names of all persons at the interrogation (subsection three); a provision against threats of dismissal but not against the requirement of blood alcohol tests or other tests (subsection seven); and provisions regarding the keeping of records, and prohibitions against the insertion of adverse materials into the officer's file without giving the officer an opportunity to review the material (subsections eight and twelve). Other procedural safeguards accorded to law enforcement officers include the right to counsel at an interrogation (subsection 10), and a provision that an officer may not be prohibited from bringing a suit arising out of his official duties (subsection 11).

(Citations omitted). Although LEOBR has undergone several changes since our decision in *Resh,* those changes are relatively insubstantial.

We shall address one other matter before reaching the merits of this appeal. In her brief to this Court, appellee asserts that an examination of the circuit court's oral ruling reveals that the circuit court did not determine that the Chief's final decision was an illegal successive punishment (which was the product of an illegal successive investigation)

in violation of constitutional double jeopardy principles, but rather that it was in violation of LEOBR. Furthermore, appellee states that "neither party below, at the administrative hearing or in the Circuit Court proceedings, ever argued the merits of a constitutional violation." [4] Because there is a degree of uncertainty regarding whether the circuit court's order was based on double jeopardy principles or LEOBR, and because the parties on this appeal have thoroughly briefed and presented arguments under both grounds, we shall address the merits of each.

## I

The prohibition against double jeopardy is applicable in Maryland as a common law principle and under the Fifth Amendment of the U.S. Constitution. *Johnson v. State,* 95 Md.App. 561, 566, 622 A.2d 199 (1993). "The Double Jeopardy Clause of the Fifth Amendment provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *Ward v. Department of Pub. Safety & Correctional Servs.,* 339 Md. 343, 350, 663 A.2d 66 (1995). The Double Jeopardy Clause protects against multiple prosecutions and multiple punishments for the same offense. *Id.* Specifically, double jeopardy grants three protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *Johnson,* 95 Md.App. at 566, 622 A.2d 199.

Although double jeopardy protection has historically been associated with criminal cases, *id.,* the Court of Appeals in *Ward* recently addressed, through dicta, double jeopardy in a factual context somewhat similar to the instant case. In *Ward,* a correctional officer argued that "the Secretary of Personnel cannot suspend him for an incident and then file charges for removal based on 'exactly the same incident.'"

---

4. Appellee concedes that her reply memorandum filed in the circuit court states that the Chief's final decision violated double jeopardy.

*Ward,* 339 Md. at 349, 663 A.2d 66. According to the officer, the initial suspension and later termination for the same infraction violated the so-called principle of "administrative double jeopardy"—a principle purportedly embodied in the Fifth Amendment. *Id.* At oral argument before the Court of Appeals, the officer abandoned this constitutional argument, but the Court nevertheless addressed it "for the sake of clarity." *Id.*

 *Ward* explained that in *U.S. v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court of the United States concluded that the government can impose punishment, not only in criminal proceedings, but also in civil proceedings. *Id.* at 350, 663 A.2d 66. *Ward* further explained that determining whether a particular civil sanction constitutes punishment within the contemplation of the Double Jeopardy Clause depends on whether the purpose of the penalty is retribution or deterrence. *Id.* (citing *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901–02). If the purpose is retribution or deterrence, the sanction is a punishment; if, however, the purpose is remedial, the sanction is not a punishment. *Id.*

Applying these principles, the Court rejected the officer's "administrative double jeopardy" argument, holding that the officer was not punished within the contemplation of the Double Jeopardy Clause. *Id.* at 350–51, 663 A.2d 66. In this regard, the Court held:

The Division of Correction, like any employer, must maintain control over its employees. To this end, the Division has established standards of conduct and published them to its employees. The standards would have no meaning, force or effect if there were no penalty for their violation. Thus, the Division has established a system of progressive discipline. Common sense dictates that this discipline is imposed to ensure that employees adhere to the established standards of conduct. Indeed, the foreword to the regulation states that "discipline shall be progressive in nature and, in combination with specific training, shall aim at correcting inappropriate employee behavior." Because the

discipline is not imposed for the purpose of punishment, the principles of double jeopardy simply do not apply.

*Id.*[5]

Similarly, our focus in *Johnson* involved the nature of the civil sanction. Therein, we rejected the double jeopardy argument of a drunk driving defendant whose driver's license had been administratively restricted in advance of his criminal conviction. In so doing, we held:

> The purpose of [the license suspension statute] is to protect other drivers on the road from those who would drive while intoxicated and to deter those who would otherwise decide to drive drunk. While the statute is also aimed at sanctioning the offending driver, that is not its primary purpose. Moreover, the mere fact that the suspension of driving privileges may carry the "sting of punishment" is immaterial. "[C]ases have acknowledged that . . . even remedial sanctions carry the sting of punishment."

> \* \* \* \* \* \*

> Appellant was deprived of a valuable right when the administrative judge issued him a restricted license. He was not, however, subject to criminal punishment for the same offense under the Double Jeopardy Clause.

*Id.* at 572–73, 622 A.2d 199 (citations omitted).

■ With these fundamental principles in mind, we turn our attention to the disposition of the first question presented. Appellee argues that she was subjected to an illegal successive punishment arising out of an illegal successive investigation in

---

**5.** "Administrative double jeopardy" was also discussed, albeit briefly, in *Department of Pub. Safety & Correctional Servs. v. Howard,* 339 Md. 357, 663 A.2d 74 (1995)—a case consolidated for argument with *Ward.* As in *Ward,* correctional officers asserted that their removal after their suspension for the same incident violated "administrative double jeopardy." *Id.* at 365–66, 663 A.2d 74. Also as in *Ward,* the officers abandoned the "administrative double jeopardy" argument and the Court nevertheless decided to discuss the argument. *Id.* at 366, 663 A.2d 74. Ultimately, the Court rejected this argument because the officers were not suspended and removed for the same incident. *Id.* at 367, 663 A.2d 74.

violation of double jeopardy. According to appellee, her first punishment came in the form of counselling and the placement into her file of the aforementioned documents; and her second punishment came in the form of the Chief's final decision to fine her $150. Also, according to appellee, she was subjected to an initial "prosecution" commencing with the first Form 242 and culminating with the alleged first punishment; and was subjected to a subsequent "prosecution" commencing with the second Form 242 and culminating with the Chief's final decision.

Like the correctional officer in *Ward*, appellee seems to suggest that double jeopardy protection applies in this case under the so-called principle of "administrative double jeopardy." According to appellee, "administrative double jeopardy" is an "accepted concept" in the labor law field. In support of this assertion, appellee has directed our attention to several published opinions of arbitrators, wherein "administrative double jeopardy" was applied to preclude an employer from twice punishing an employee for the same incident.

For example, in *In re City of Kenosha*, 76 Lab. Arb. Rep. 758, 759 (1981), the arbitrator explained:

> In industrial relations, the doctrine of double jeopardy means that if an employe [sic] is *punished* for a specific act, he is entitled to regard such *punishment* as final for that particular misconduct. However, there is arbitral precedent for a definite suspension followed by an investigation resulting in discharge or the withdrawal of discipline as not constituting double jeopardy. Lastly, an employe [sic] may not be given a written reprimand subsequent to an oral reprimand for the same offense *when the oral reprimand was intended as a final disposition of the disciplinary matter.*

(Emphasis added & footnotes to arbitration decisions omitted). Appellee also directs our attention to *In re Int'l Harvester Co.*, 16 Lab. Arb. Rep. 616 (1951), wherein the arbitrator explained that he was empowered to apply the doctrine of double

jeopardy even though he was not a criminal court judge, and stated:

> I conclude that if Hall was *punished* twice for the same offense or offenses the second penalty must be set aside.

(Emphasis added).

The foregoing arbitration opinions notwithstanding, "administrative double jeopardy" has not been recognized in Maryland, as indeed *Ward* did not adopt the concept. It must be remembered that *Ward*'s discussion of "administrative double jeopardy" was dicta to our analysis in the instant case, however, it does not much matter whether "administrative double jeopardy" is an "accepted concept" and a viable principle of Maryland law. This is because the counselling and the placement of the documents in appellee's file was not punishment but was merely remedial administrative action, and because appellee was not subject to successive prosecutions for the same offense.

The counselling that appellant received was not punishment in any sense of the word. The purpose of Sterling's counselling in this case was obviously remedial in nature. The counselling was, as stated, designed to "prevent a recurrence." Sterling was not attempting to extract retribution from appellee. Nor was he hoping to deter other officers from driving away from the fuel station before removing the nozzle from their cars. Indeed, the brevity and informality of Sterling's contemporaneous counselling supports our view. Under the circumstances of this case, it simply cannot be said that Sterling doled out a punishment. To conclude otherwise would lead to the absurd result of elevating to the punishment level every instance in which a superior brings to his subordinate officer's attention a shortcoming in the officer's job performance or suggests to the officer that a better way exists for carrying out a particular job responsibility.

In addition, Sterling's counselling did not become punishment merely because he took the time to document his discussion with appellee. It is beyond cavil that it is smart managerial practice on a number of levels for an employer to

document an employee's performance and discussions he has with the employee pertaining thereto. This is especially so in the context of law enforcement. Holding that Sterling's counselling rose to the level of punishment merely because he documented the counselling would discourage this sound practice. Furthermore, it cannot be forgotten that the SIIR is a routine County-wide report that must be completed whenever County property is damaged. Thus, Sterling was administratively obliged to document the steps he took in response to appellee's accident.

■ Appellee retorts, however, that Sterling's counselling was punishment because Sterling administered it during a LEOBR investigation. In this regard, appellee states that "[c]ounselling alone ... without an interrogation or investigation or a formal complaint or an inquiry does not trigger LEOBR protection." Nothing in LEOBR, however, indicates that Sterling's counselling was transformed into punishment within double jeopardy by the mere fact that it occurred during a LEOBR investigation. Stated differently, appellee has presented no authority to support the notion that displeasing administrative action against an officer necessarily becomes punitive (in the constitutional sense of the word) when it arises out of, or during the course of, a LEOBR investigation.

Section 728(c) of LEOBR supports our view. That section expressly provides that LEOBR "does not limit the authority of the chief to regulate the competent and efficient operation and management of a law enforcement agency by any reasonable means...." MD. ANN.CODE art 27, § 728(c) (1992). By this subsection, the Legislature made clear that LEOBR does not encroach upon the ability of the law enforcement agency to conduct its affairs and operations efficiently and effectively. *Resh*, 65 Md.App. at 176, 499 A.2d 1303. In our view, when appellee informed Sterling of the incident, § 728(c) permitted Sterling, as the superior officer, to take the immediate corrective measure of counselling appellee even though the incident was also the subject of a LEOBR investigation.

■ Appellee further contends that the counselling was punishment because it amounted to an "Oral Admonishment"—the first of seven "Types of Disciplinary Action" under § 27–3 of the Montgomery County Personnel Regulations. Section 27–3 is incorporated by reference into the collective bargaining agreement between the police union and the Montgomery County Police Department. An "Oral Admonishment" is defined under § 27–3 as "[a] spoken warning or indication of disapproval concerning a specific act, infraction or violation of a policy or procedure that is usually given by the immediate supervisor and is noted for the record but does not become part of an employee's personnel record."

In the instant case, appellee did not receive an "Oral Admonishment" when Sterling counselled her. As we explained, the purpose of Sterling's communication was remedial. When Sterling counselled appellee he was not giving her a warning or indicating his disapproval of appellee. Rather, Sterling merely advised appellee to be more careful in the future when fueling the cruiser. Even if Sterling's counselling could be considered an "Oral Admonishment" (and thus a form of "Disciplinary Action"), we would nonetheless hold that Sterling was not admonishing appellee for punitive purposes. We caution appellee not to confuse disciplinary action with punitive action. In this case, as in *Ward*, the two are not the same. *See, e.g., Ward*, 339 Md. at 351, 663 A.2d 66 ("Because the discipline is not imposed for the purpose of punishment, the principles of double jeopardy simply do not apply.").

■ Similarly, nothing in the record even remotely suggests that the placement of the documents in appellee's personnel file was punishment. The first document—the "Motor Vehicle Accident or Loss Notice"—simply reflects that appellee drove away from the fuel pump before removing the fuel hose nozzle and that the repair estimate was $400. This notice is not a formal admonishment, reprimand, or demerit; nor could it be construed as such. It merely reflects an occurrence involving minor damage to County property. Ap-

pellee has failed to establish that the purpose of including this document in appellee's file was to punish appellee.

Nor has appellee demonstrated that there was a punitive purpose underlying the placement of the SIIR in appellee's file. The bare notation "Counseled" on an SIIR, without anything more, does not denote punishment. According to WEBSTER'S NEW WORLD DICTIONARY 323 (2d ed.1982), the definition of "counsel" includes "a mutual exchange of ideas, opinion, etc.," "discussion and deliberation," "advice resulting from such an exchange," "any advice," or to "recommend." None of these definitions carries a negative connotation or even hint at something punitive. As we explained above, sound managerial practice supports the documentation of such incidents. The record unquestionably demonstrates that Sterling was acting in accordance with this practice when he placed the innocuous SIIR in appellee's file.

The record is equally devoid of any indication that Sterling was punishing appellee by placing the first Form 242 in appellee's file. While we acknowledge that this document indicates that the incident would be investigated, we do not believe that the purpose of placing this document in appellee's file was to punish appellee. This document is clearly intended to serve a formal notification function. All signs indicate that furtherance of this function was the primary reason that this document was placed in appellee's file. Appellee has not demonstrated, nor does the record support, anything to the contrary.

■ Along similar lines, we disagree that the inclusion of these documents in appellee's file constitutes a "Written Reprimand"—the second of the seven "Types of Disciplinary Action" under § 27–3 of the Montgomery County Personnel Regulations. Section 27–3 states that a "Written Reprimand" is "[a] written statement concerning a specific act, infraction or violation of a policy or procedure that is made a part of the employee's personnel record." A true leap is required before the documents in question could be considered written reprimands, as that term is commonly understood. Even if we

assumed that the documents meet the technical definition of "Written Reprimand" under § 27-3, we would conclude that such "Disciplinary Action" is not punitive. Rather, the unchallenged facts in the record convince us that these documents were placed in appellee's file as part of an internal administrative record-keeping function—and not out of a desire to exact retribution from appellee or to deter such incidents in the future.

We hold, therefore, that the counselling and inclusion of the above-discussed documentation in appellee's personnel file was not punishment under the Double Jeopardy Clause. This holding notwithstanding, we recognize that it is possible that the collection of these documents in appellee's file might negatively reflect upon appellee, and that the counselling might have been an embarrassing or negative experience for appellee. This negative impact on appellee, however, does not transform the action into punishment. In this regard, appellee may have felt the "sting of punishment." As the cases demonstrate, however, the "sting of punishment," is not invariably caused by punishment within the contemplation of double jeopardy principles. Accordingly, we agree with the County that the "counseling of a police officer and the recording of that event in the personnel record is more purely remedial in purpose than either the sanction of suspension imposed in *Ward* or the administrative license suspension imposed in *Johnson.*"

 In addition to holding that appellee was not punished within the contemplation of the Double Jeopardy Clause, we hold that appellee was not successively prosecuted. Appellee has offered no authority to support her position that a second prosecution commenced with the second Form 242. Appellee is assigning too much significance to the fact that she received two Form 242's pertaining to the same incident. We explain.

Our review of the record indicates that the exchange between Buchanan and appellee's representative during the November 2, 1994 tape recorded interrogation is the only place where an explanation can be found for why appellee received

two Form 242's. Therein, Buchanan explained that Sterling issued the first Form 242 for purposes of Sterling's preparation of the SIIR. The clear implication of Buchanan's explanation is that the scope of Sterling's investigation was limited to the documentation of property damage for the SIIR, whereas Buchanan would handle matters beyond that, i.e., the formal discipline of appellee, as part of his investigation. There is no evidence in the record indicating anything else to the contrary. Thus, we are not faced with two separate and distinct investigations culminating with two administrative dispositions. Rather, the investigation of the nozzle incident was an investigation with two concerns—the ministerial documentation of property damage and the administrative disciplinary action against an officer. Sterling was responsible for the former and Buchanan was responsible for the latter. Appellee has failed to demonstrate why the two cannot constitutionally coexist.[6]

## II

Next, we hold that there was no violation of LEOBR in this case. Nothing in LEOBR—expressly or implicitly—precluded appellee from being served with a second Form 242 and from ultimately being fined by the Chief, after having been counselled and the documents having been inserted into appellee's file.

As we explained, the placement of the documents into appellee's file was not a final punishment, but rather was a legitimate administrative step taken during the course of an ongoing investigation. Under § 728(b)(12) of LEOBR,

> (i) A law enforcement agency may not insert any adverse material into any file of the officer, except the file of the internal investigation or the intelligence division, unless the

---

**6.** Of course, appellee's double prosecution argument rests on the assumption that a LEOBR investigation is tantamount to a "prosecution," as that term is used in double jeopardy analysis. Given our view of the nature of the investigation in this case, there is no need for this Court to address whether this underlying assumption is correct.

officer has an opportunity to review, sign, and receive a copy of, and comment in writing upon the adverse material, unless the officer waives these rights.

(ii) A law enforcement officer, upon written request, may have any record of a formal complaint made against him expunged from any file if:

1. The law enforcement agency investigating the complaint has exonerated the officer of all charges in the complaint, or determined that the charges were unsustained or unfounded, or an administrative hearing board acquits, dismisses, or makes a finding of not guilty; and

2. 3 years have passed since the findings by the law enforcement agency or administrative hearing board.

Md. Ann.Code art. 27, § 728(b) (1992).

We shall assume without deciding that the circuit court correctly determined that the documentation placed in appellee's personnel file was "adverse material" within the meaning of § 728(b)(12).[7] We shall also assume without deciding that the first Form 242 is a "record of a formal complaint" within the meaning of sub-part (ii) of this provision.

---

7. This assumption is not inconsistent with our holding in Part I. Even if the documentation at issue in this case could be considered "adverse material" because it might negatively reflect on appellee's job performance, the inclusion of such materials in appellee's file was not punishment, as we explained in Part I. In this respect, not all things adverse are punitive. *Cf., Ward,* 339 Md. at 351, 663 A.2d 66 ("Because the discipline is not imposed for the purpose of punishment, the principles of double jeopardy simply do not apply.").

Of passing interest is the fact that the Memorandum of Notification (advising appellee that the aforementioned documents would be placed in her file) has an open space (i.e., "( )") corresponding to the following statement:

The documentation indicated above may be considered "adverse material." A copy is therefore attached for your review. You may make written comments on this material below or on a separate sheet. Please sign below to indicate your receipt of the materials checked above and return to your commanding officer.

Although the open spaces on the Memorandum of Notification corresponding to the listings of the "Motor Vehicle Accident or Loss Notice," the SIIR, and the Form 242 contain Sterling's handwritten check mark, the open space corresponding to the above statement is noticeably empty, i.e., no check mark.

By obtaining appellee's signature on the Memorandum of Notification—which advised appellee that the documents in question would be placed in her personnel file—sub-part (i) of the above provision was satisfied. Consequently, appellee's superiors were authorized to place the documents in her file. Significantly, sub-part (i) contains no prohibition against the placement of adverse materials in an officer's file during the course of an investigation. In this regard, sub-part (i) is not concerned with when adverse documents are included in an officer's file so long as "the officer has an opportunity to review, sign, and receive a copy of, and comment in writing upon the adverse material...." Similarly, sub-part (ii) does not preclude a record of formal complaint against an officer from making its way into the officer's file before the formal disposition of the complaint. Thus, LEOBR was satisfied with respect to the inclusion in appellee's file of any "adverse materials" relating to the incident.

Furthermore, nothing in LEOBR precludes appellee from being counselled regarding the nozzle incident at the time that appellee reported the incident to Sterling or shortly thereafter, even though the incident had become the subject of a LEOBR investigation. Indeed, as we have previously noted, § 728(c) expressly provides that LEOBR "does not limit the authority of the chief to regulate the competent and efficient operation and management of a law enforcement agency by any reasonable means...." We view the counselling that occurred during this case (as well as the placement of the documentation in appellee's file during the course of the investigation) as included in the class of those administrative actions that LEOBR does not proscribe.

Lastly, under the circumstances of this case, neither the spirit nor the text of LEOBR was undermined by the issuance of the two Form 242's. As we have discussed, the nature of the investigation reasonably explains why two Form 242's were issued in this case, and the manner in which the investigation was conducted did not offend LEOBR.

## CONCLUSION

To be sure, reasonable minds might differ regarding whether more was made out of this incident than was necessary. There was relatively minor damage to County property and, although the infraction was obviously careless, it was somewhat understandable under the circumstances of a code 3 emergency response. Nonetheless, this was the second time appellee pulled away from the pump station without removing the hose nozzle from her vehicle, and County policy requires documentation of incidents involving damage to County property. The bottom line, however, is that the Montgomery County Police Department, "like any employer, must maintain control over its employees." *Ward,* 339 Md. at 350, 663 A.2d 66. Regardless of whether matters were blown out of proportion, neither the Double Jeopardy Clause nor LEOBR was violated during the course of the administrative events of this case.

For all of the reasons set forth above, we hold that the circuit court erroneously determined that appellee was subjected to an illegal successive punishment arising out of an illegal successive investigation—regardless of whether the circuit court's determination was based on LEOBR or on principles of double jeopardy. Accordingly, we reverse the circuit court, and the Chief's final decision shall remain undisturbed.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**