ANTONIO COLLINS, PLAINTIFF IN ERROR, vs. NICHOLAS H. MITCH-ELL, DEFENDANT IN ERROR.

A bond conditioned for the forthcoming of property "to abide the final order of the Court," varies from the condition of the bond provided by the statute which is "for the forthcoming of the property replevied, and to abide the final order of the Court."

In an action of debt on a bond given under attachment process, pursuing the form prescribed by the statute, the judgment being the final order of the Court in the attachment suit, would constitute the rule and measure of damages for a failure to deliver the property.

But where the condition of the obligation is "for the forthcoming of property," then upon the return of the officer that the property attached is not forthcoming, or that defendants in attachment have no property in his bailwick to satisfy the execution, founded on the judgment in the attachment suit, the liability of the surety on the bond attaches, and the measure of damages in an action against him would be the value of the property at that time with interest.

Mitchell, the defendant in error, brought an action of debt in the Circuit Court of Escambia County, on a bond executed by the plaintiff in error, together with J. N. C. Stockton & Co. and Hanson Kelly, and dated the 13th of January, 1840. The bond sued on was delivered to the sheriff of Walton County, who had levied an attachment upon certain slaves as the property of J. N. C. Stockton & Co., and which attachment had been sued out of the late Superior Court of Walton County by Mitchell, for a debt claimed to be due him to the amount of nine hundred dollars. The bond is in the penal sum of

$1800, and the condition thereof is in these words—"Now if the said J. N. C. Stockton shall *cause said slaves to be forthcoming to abide the final order of the Court,* then this obligation to be void, else to remain in full force and virtue."

The declaration avers that the final order of said Court, that is to say, the judgment against J. N. C. Stockton, was rendered on the 27th day of April, 1842, for $1211 75–100, and that execution issued thereon and was returned "no property found."

The declaration then avers that the said J. N. C. Stockton & Co. did not nor did any other person or persons cause the said slaves to be forthcoming to abide the final order of the Court. By means whereof the plaintiff sustained damages to the amount of $1800.

The defendant (Collins) filed three pleas.

The first states that at the time of the institution of the suit against J. N. C. Stockton, as well as at the time of the rendition of the said supposed judgment against the said J. N. C. S., he the said J. N. C. Stockton had departed this life—without this that there was any other final order or judgment in said cause ; and so the said defendant says there was no final order, judgment, or decision in said cause.

The second plea filed is *non est factum.*

And the third is the same as the first, except that it states the institution of the suit and the rendition of the judgment as against J. N. C. Stockton & Co., and not J. N. C. Stockton alone.

The plaintiff demurred to the first and third pleas, and the demurrer was sustained by the Court.

The cause was tried at the fall term, 1849, of the Circuit Court of the County of Escambia, Hon. GEORGE S. HAWKINS, presiding.

The jury found for the plaintiff and assessed his damages at one thousand four hundred and thirty-six dollars and twenty-six cents, and judgment was given accordingly. On the trial of this cause defendant's counsel moved the Court to instruct the jury, that the plaintiff could not recover other than a mere nominal sum, without showing the value of the slaves replevied by other evidence than that afforded by the replevin bond itself, which instruction the Court refused, and gave the following : "that the jury should assume the half of the penalty of the bond to be the true value of the slaves." To this refusal of the Court and to the charge given, the defendant excepted.

To reverse the judgment rendered in this case the defendant prosecuted this writ of error.

*M. A. Long*, for plaintiff in error :

This is an action of debt upon a replevy bond, executed by the defendant, as a surety, on the 13th January, 1840, and delivered to the Sheriff of Walton County, who had levied an attachment upon " certain slaves, as the property of J. N. C. Stockton & Co.," as recited therein. The bond is in the penal sum of $1,800. The bond recites that the debt claimed in the attachment was $900. The declaration alleges for breach of the bond—that the said negro slaves were not delivered to abide the final order of the Court, to which the attachment was returned, and " that the final order of said Court, to wit, the judgment against the said J. N. C. Stockton, & Co., was rendered on the 27th day of April, 1842, for $1,211 75," and that execution was issued thereon, and returned " no property found," &c. Three pleas were filed, but no question is made upon the second, which is *non est factum*.

These pleas are demurred to, and the judgment of the Court sustained the demurrer, which we assign as error. Two questions are presented by this assignment of error. The first is, does the fact pleaded amount to a good defence in law, supposing the plaintiff's declaration to be good ; and the second is, whether the declaration is not bad, the demurrer also raising that question.

The declaration is bad for several reasons :—

1. The condition of the bond sued on is void for uncertainty, in omitting to recite the number, names, ages or sex of the slaves, which were " to be forthcoming to abide the final order of the Court." The surety is not bound to deliver any particular slaves, and, indeed, is not by the bond informed what slaves had " been levied upon." If his undertaking is not in the bond itself set forth with reasonable certainty, the Court cannot, upon demurrer, see that he has failed to comply therewith. For aught the Court can see, the endorsement of the levy on the writ of attachment was as vague and uncertain as the condition of the bond in this respect ; wherefore, it is no answer to this objection to say, that a reference to the levy will cure the uncertainty.

2. The declaration alleges that the condition of the bond re-

quired J. N. C. Stockton to cause the said slaves to be forthcoming, whereas the bond itself requires J. N. C. Stockton & Co. to do so. This is a variance.

3. The declaration does not allege that any final order was ever rendered in the particular attachment suit mentioned in the condition of the bond. The averment is, "that the final order of said Court, to wit, the judgment against said J. N. C. Stockton & Co. was rendered on the 27th day of April, 1842," &c. "The judgment against said J. N. C. Stockton & Co." is too general, for it does not appear even that it was in favor of the plaintiff, much less that it was upon the particular attachment mentioned before.

4. The persons against whom the judgment was rendered are equally vague and uncertain, namely, J. N. C. Stockton (and company) & Co.

It is evidently intended to intimate that this final order or judgment was rendered against some one else besides J. N. C. Stockton, and yet no name is disclosed. No such judgment could legally have been rendered as that mentioned in the declaration, even if the person in whose favor it was rendered had been named. In a suit against a firm, you may serve process on one, but must declare and recover against all, and the name of each must appear, as well in the declaration as upon the record of judgment. "Partners cannot be individually sued for a partnership debt. Each partner is bound for the whole until the debt is paid; but payment can be enforced only by a joint action against all. Their responsibilities are joint only, and not joint and several, so as to subject each to a separate action." 1 Chit. Pl., 43, note 3. Robertson vs. Smith, 18 John. Rep., 459. Henry Van Tine vs. Crane, et al., 1 Wend. R., 524.

Therefore, it follows that, as the judgment or "final order" set forth in the declaration is only against one person, it cannot be the judgment or final order which the defendant was bound to have the said slaves forthcoming to abide. The execution, says the declaration, which was returned no property found, was issued upon said judgment—that is, against J. N. C. Stockton alone, and not against the firm. It does not, therefore, appear but what the slaves would have been delivered, had a proper judgment and execution been rendered and issued, which being a condition precedent to any right to sue on the bond, must be distinctly averred. 1 Chit. Pl., 368.

The second question raised under the demurrer is, whether the judgment or final order is not shown to be void, by the existence of the fact thus mentioned in the pleas, namely, the death of J. N. C. Stockton, before the attachment suit was commenced. We have already seen that the judgment does not purport to be rendered against any other person ; but we are prepared to show that, if it had been against his copartners by name, it would have been void as to them, if void as to the deceased. We understand that it is conceded on the other side, that a Court has no jurisdiction to render a judgment against a man who has had no notice of the suit, actual or constructive, and that death before suit brought precludes the possibility of either. The authorities are full to this principle. In the case of Elliott and others vs. Pearson and others, 1 Peters, 341, the Supreme Court of the United States say : " Where a Court has jurisdiction, it has a right to decide every question which occurs in a cause ; and whether its judgment be correct or otherwise, its judgment, until reversed, is binding in every other Court. But if it act without authority, its judgments and orders are regarded as nullities. They are not voidable, but simply void." And in the same case, the Court remark that " the jurisdiction of any Court exercising authority over a subject, may be inquired into in every Court, when the proceedings of the former are relied on and brought before the latter, by the party claiming the benefit of such proceedings."

In the case of Hollingsworth vs. Barbour and others, 4 Peters R., 472, the same Court say : " By the general law of the land, no Court is authorized to render a judgment or decree against any one or his estate, until after due notice by service of process to appear and defend. This principle is dictated by natural justice," &c.

The same doctrine is held in the case of Rangeley vs. Webster, 11 N. H. Rep., 304. In Bissell vs. Briggs, 9 Mass. Rep., 462, Chief Justice Parsons remarks that " the Court must have had jurisdiction, not only of the cause, but of the parties." See also Hall vs. Williams, 6 Pick., 232, in which it is said, " the judgment being entire, if it is a nullity with respect to one, it is also in the whole." In Holbrook vs. Murray, *et al.*, 5 Wend., 161, the Court say : " The facts stated in the plea being admitted by the demurrer, the defence of want of jurisdiction as to the person of this defendant, (Murray,) is established ; as to him the judgment is not conclusive, not even

evidence of a demand—it is a nullity.   What effect has this on the other defendants, whose plea does not afford any defence ?   The judgment is entire, and if void as to one defendant, where there are several, it is void as to all."   And this precise point was decided in the same way in Richard vs. Walton, 12 John. Rep., 434.   Westervelt vs. Lewis, 2 McLean, 511.   Smith vs. Russ., 1 Mis., 453. Armstrong vs. Horshaw, 1 Dev., 187.   Lewis vs. Ash, 2 Miles, 110.

From a view of these authorities, I respectfully submit, that the judgment or final order, set forth in the declaration, was totally void, as to all against whom it was rendered, whether it be regarded as rendered against J. N. C. Stockton alone, or against him jointly with others not named, but included under the abbreviated epithet, " & Co.;" and that the pleas constituted a good defence to the action. If the bond ever had any validity, therefore, there has not been any " final order of the Court," which it was the duty of the defendant " to abide by, causing the said slaves to be forthcoming."   And if this be correct, it follows as a necessary conclusion, that the writ of attachment was void when sued out, and the levy on the slaves also. The bond taken to replevy the property was equally void, having been literally extorted upon false pretences, under mere color of law.

The second error assigned, arises upon the charge of the Court, set forth in the bill of exceptions, which is in these words : " The jury should assume the half of the penalty of the bond to be the true value of the said slaves," and the refusal of the Court to charge as requested by defendant below, " that the plaintiff could not recover other than a merely nominal sum, without showing the value of the slaves replevied, by other evidence than that afforded by the replevin bond itself."   The doctrine here advanced by the Court below is believed to be without any precedent, and in violation of a very old and familiar rule of law, that plaintiff must prove damages before he can recover therefor.   The case cited on the other side, from 3 Conn. Reps., 248, and there was but one cited, is not at all in point.   The question did not arise upon the trial before the jury, in the assessment of damages.   The defendant in that case pleaded that the bond was void, because the property for which the bond had been given, under an embargo law of the United States, had been valued too high by

2

the officer to whom the bond had been executed and delivered. The plea was held to be no defence, and that the bond was not void.

*C. C. Yonge*, for defendant in error:

Contended that the demurrer to first plea was well taken, because the count alleges a judgment against J. N. C. Stockton & Co., and the plea states that no final order was made in the case of John N. C. Stockton, and cited Chitty P., 521. 7 John, 402. Bacon's Ab. Pleas. Skinner vs. Bebow, 2 Strange 919.

The demurrer to third plea was also good, 1st, because the plea is argumentative. 2d, because, though Stockton was dead, it was competent for the survivors to continue the use of the name of the firm; and the bond furnishes the evidence that it was so used after the time at which according to the plea, Stockton died. The bond was a good common law bond, at least, made by the survivors of the firm and the sureties for the forthcoming of property.

The validity of the judgment against J. N. C. Stockton & Co., being a judgment of a Court of competent jurisdiction, cannot be inquired into in a collateral proceeding. Voorhees vs. Bank of U. S., 10 Peters, 473.

The instruction of the Court to the effect that the penalty of the bond furnished evidence on which to base a verdict as to the value of the property, was right. See 3 Cond. Rep., 248.

BALTZELL, J.

This was an action of debt instituted by defendant in error against plaintiff as one of the securities on a forthcoming bond given under attachment process. The defendant filed three pleas which were demurred to, and the demurrer sustained by the Court. Leave was given to plead anew within sixty days, which however seems not to have been done, and the case in this situation, was, as appears from the record, submitted to the jury.

On the trial, the plaintiff gave in evidence the bond sued on, with other evidence, whereupon " defendant's counsel moved the Court to instruct the jury that the plaintiff could not recover other than a merely nominal sum, without showing the value of the slaves replevied by other evidence than that offered by the replevin bond itself, which instruction the Court refused to give, but instructed the

jury that they should assume the half of the penalty of the bond to be the true value of the said slaves." The propriety of this instruction is the only question presented by the record.

The bond in question is thus described in the condition : " whereas Nicholas H. Mitchell has sued out an attachment against J. N. C. Stockton & Co. for $900, which has been levied upon certain slaves as the property of J. N. C. S. & Co., and the said J. N. C. S. & Co. wishing to replevy the said slaves, now if the said J. N. C. S. & Co. shall cause the said slaves *to be forthcoming to abide the final order of the Court*, then the obligation to be void, else to remain in full force and virtue." It will be perceived that this varies from the condition of the bond provided by the statute which is for " the forthcoming of the property replevied to abide the final order of the Court." If it had pursued the statute, the amount of the judgment being the final order of the Court, which the security had undertaken to abide by, would probably form the criterion and rule of the damages for a failure to deliver the property.

The *defendant's* engagement is not of this character, and he has a right to insist upon its very terms. He engages that the principals, the Stocktons, shall cause the said slaves to be forthcoming to abide the order of the Court. Now if the obligation had been complied with by delivery of the slaves, plaintiff would have been entitled to a sale of them under execution, and the appropriation of the proceeds to his debt. He is entitled to be placed in the same position by the failure which he would have occupied if the Stocktons had fulfilled their agreement, and this, in our opinion, constitutes the true measure of damages. Defendant's liability, as that of any other security to such an obligation, attaches upon the return of the officer that the property attached is not forthcoming to abide the order of the Court, or that the defendants have no property in his bailwick to satisfy the execution. The value of the property at that time, with interest, would seem to be the appropriate measure of damages.

The case will then be reversed for this error, and the judgment set aside, and a *venire facias de novo* awarded, with leave to each party to amend his pleadings, and the cause remanded for further proceedings, not inconsistent with this opinion.

We add that in case of another appeal, a copy of the entire record in the suit of Mitchell vs. the Stocktons be sent up, that this Court

may, if required to decide the farther points in the case, be possessed of the entire facts necessary to a correct adjudication.