790 A.2d 73

## DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES,

v.

## Clifton Earl SHOCKLEY.

No. 2081, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Jan. 31, 2002.

314

Michele J. McDonald, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Francis J. Collins (Kahn, Smith & Collins, P.A., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., HOLLANDER, and JAMES R. EYLER, JJ.

MURPHY, Chief Judge.

 This appeal from the Circuit Court for Somerset County involves the conflict between a public employer's right to insist that its employees answer questions relating to their fitness for public service and the employees' right to assert the privilege against self-incrimination. The Department of Public Safety and Correctional Services ("Department"), appellant, asks us to hold that it was entitled to discipline a correctional officer who refused to cooperate in an investigation of his off duty activities. Appellant presents two questions for our review:

I. Did the Administrative Law Judge err, as a matter of law, by holding that the Department could not suspend its employee for refusing to answer job-related questions because the employee's answers may be evidence in a criminal proceeding where the law clearly provides that a public employee may be disciplined for refusing to answer if the employee is not compelled to waive his constitutional privilege against self-incrimination and the statements are not used against him in a criminal proceeding?

II. Did the Administrative Law Judge err, as a matter of law, by interpreting the Department's standards of conduct to limit an employee's obligation to answer job-related questions to cases where the Department has demonstrated that the alleged conduct affects the security of a correctional facility?

For the reasons that follow, we shall answer "yes" to the second question, address the issues presented in the first

question, vacate the judgment of the circuit court and remand for further administrative proceedings not inconsistent with this opinion.

## Background

Clifton Earl Shockley, appellee, is a correctional officer (CSO II) assigned to the Eastern Pre Release Unit (EPRU). On January 28, 1999, one Verna Rhyanes complained to officers of the EPRU and of the Centerville Police Department that appellee threatened to "whip her ..." She also accused appellee of using narcotics. The Department assigned Lt. Frederick Wetzel to investigate those accusations. He interviewed appellee on February 23, 1999.

During his interview, appellee refused to respond to Rhyanes' accusations on the grounds that they arose out of a "personal" matter that was not work related and did not involve anything that occurred while he was on duty. At this point, Lt. Wetzel advised appellee that the Department holds its employees responsible for conduct on and off the job, and that the Department's regulations require an employee to cooperate with an investigation and to answer questions.[1]

---

1. The advice Lt. Wetzel provided is based on Division of Corrections Regulation (DCR) 50–2, entitled Standards of Conduct and Performance Standard, § II.B.1. and § II.K.4. According to appellant, appellee violated § II.B.1. and § II.K.4. when he refused to answer questions regarding Ms. Rhyanes' complaint.

 Section II.B.1. establishes that "Each employee shall conduct him/herself at all times, both on and off duty, in such a manner as to reflect most favorably on the Department. Any breach of the peace, neglect of duty, misconduct or any conduct on the part of any employee of the department, either within or outside his/her place of employment, which tends to undermine the good order, efficiency or discipline of the Department, or which reflects discredit upon the department or any employee thereof, or which is prejudicial to the efficiency and discipline of the Department, even though these offenses may not be specifically enumerated or stated, shall be considered conduct unbecoming an employee of the Agency, and subject the employee to disciplinary action by the agency." *Id.* at Part II.B.1.

 Section II.K.4. establishes that "An employee shall cooperate with a superior or other person designated to conduct an investigative procedure. An employee shall answer all questions truthfully and to the full

When Captain William Blackiston entered the interviewing room at the request of Lt. Wetzel, appellee again asserted that he would not discuss any details of this "personal" matter. On February 24, 1999, Lt. Wetzel filed an incident report in which he documented appellee's refusal to cooperate with the investigation.

On February 26, 1999, appellee was advised that his refusal to cooperate with the investigation constituted a violation of the Department's standards of conduct, and that he would be suspended without pay from March 1, 1999 to March 5, 1999. Appellee appealed the suspension through the disciplinary appeal process and the case was referred to the Office of Administrative Hearings.[2] An Administrative Law Judge (ALJ) reversed the suspension in an order that included the following findings and conclusions:

There is no dispute that the Employee did not provide information or details about behavior of January 27, 1999 to Lt. Wetzel on February 23, 1999. Management argues that by failing to do so he violated the regulations and is subject to discipline; and that a five-day suspension is appropriate. The employee counters that he did not cooperate with the investigation but chose not to provide any details due to the potential criminal charges and civil litigation. Based on a review of the evidence and relevant law, I conclude that the Employee did not violate the DCD by failing to answer specific questions regarding his alleged misconduct for the reasons set forth below.

---

extent of his or her knowledge due to security purposes." *Id.* at Part II.K.4.

2. Pursuant to Md.Code Ann., State Pers. & Pen. § 11–110 (1997), Appellee appealed the action to the Secretary of the Department of Budget and Management on March 22, 1999.

Under Md.Code Ann., State Gov't § 10–205, the head of an agency has the option of either allowing the agency to conduct the hearing in a contested case or delegating such authority to the Office of Administrative Hearings, which designates an Administrative Law Judge to hear the case. Because the agency authorized the Administrative Law Judge to make the final administrative decision in this case, the agency was entitled to judicial review in the circuit court.

An employee of the DOC "shall conduct him/herself at all times, both on and off duty, in such a manner as to reflect most favorably on the Department." DCD 50–2 II.B. Therefore, an Employee's off duty conduct can be the basis for discipline if it would affect the performance of his duties or would bring disfavor to the DOC. The DOC rules not only require a correctional employee to "cooperate" with an investigation, but also require an employee to answer all questions truthfully and to the full extent of his/her knowledge. Due to the nature of the work in a correctional facility full disclosure is often critical to preventing a breach in security. Therefore, the DOC has a legitimate purpose in requiring its employees answer questions fully during an investigation.

However, management's legitimate concerns must be weighed against the Employee's interest in not making a statement that could be used against him in a criminal matter. I know of no provision that would bar the police, state's attorney or a litigant in a civil matter from discovering the Employee's statements made during a personal investigation. This places the Employee in a quandary. If he answers the investigator's questions to the full extent of his knowledge, he could be providing evidence against himself in a criminal proceeding. If he fails to answer the questions he subjects himself to possible discipline for insubordination.

Although there are some situations in which full disclosure of the details of off duty conduct is necessary to protect the security of the facility, its staff and inmates, this is not one such situation. The parties agree that the January 23, 1999 incident did not involve the Employee's duties as a Correctional Supply Officer, occurred while the Employee was off the premises of EPRU, and while the Employee was off duty. There is no evidence that the Employee's behavior affected the security of the EPRU. DCD 50–2 II.K.4 requires an employee to answer investigative questions due to "security purposes." Management provided no evidence or explanation why the Employee's private behavior ...

affects the security of the EPRU. Without some indication of how the DOC was harmed or potentially harmed by the alleged conduct I cannot conclude that the Employee is required to disclose information that may be used against him in a criminal proceeding. Therefore, the Employee has not violated DCD 50–2II.K.4 and the five day suspension is inappropriate.

Based on the forgoing Findings of Fact and Discussion, I conclude as a matter of law that Management has failed to show by a preponderance of the evidence that the Employee's conduct on February 23, 1999 violated DCD 50–2II.K.4. *Insubordination.* COMAR 17.04.05.01D and Md.Code Ann., Pers & Pen. §§ 11–103 and 11–104 (1997).

After the Department filed a petition for judicial review, the Circuit Court for Somerset County affirmed the ALJ's decision. The circuit court's order was accompanied by a memorandum that provided the following analysis:

The issue before both the Administrative Law Judge and this Court is limited to whether or not Respondent was required to respond to questions regarding an off-duty incident during an investigation conducted by the Department of Corrections for which the Respondent worked.

Petitioner attempts to argue that the five-day suspension of Respondent was warranted and appropriate under *Garrity v. State of New Jersey,* 385 U.S. 493 [87 S.Ct. 616, 17 L.Ed.2d 562] (1967); *Gardner v. Broderick,* 392 U.S. 273 [88 S.Ct. 1913, 20 L.Ed.2d 1082] (1968) and the Fourth Circuit case of *Wiley v. Doory,* 14 F.3d 993 (4th Cir.1994). While this Court defers to the holdings in these case [sic], they are inapplicable to the case presently before the Court. It is not necessary for this Court to reach the question of what types of sanctions were appropriate, since the alleged violation of regulations by Respondent never reached the threshold requirement of posing a security threat to the department. Thus, no sanction in his case was appropriate for his refusal to answer questions in this specific instance.

Both Petitioner and Respondent cite the DPSCS "Standards of Conduct and Performance," Section II.K.4 as authority for Respondent's obligation to the department to answer questions and as the authority for the subsequent suspension. Petitioner states, "At no time during the investigative interview did Mr. Shockley assert any privilege. Instead he refused to answer questions on the grounds that it was a personal matter." This Court does not controvert the principle that a public employee may be sanctioned for refusing to answer questions when he or she is in violation of the "Standards of Conduct and Performance."

The choice that Respondent was required to make placed him on the horns of a dilemma. He could answer questions concerning a matter that he felt was unrelated to work and be subject to disciplinary action for his off-duty actions and potentially waive any rights he would have to not incriminate himself on these matters or he could refuse to answer the questions and subject himself to disciplinary action from the Agency. Essentially, Respondent was in a situation in which he was required to make a Hobson's choice.

The Court of [Special] Appeals stated that, "a reviewing court may substitute its judgment on law for that of the agency if the factual findings supported by substantial evidence are susceptible of but one legal conclusion, and the agency does not so conclude." *Travers v. Baltimore Police Dept.*, 115 Md.App. 395, 420 [693 A.2d 378] (1997) citing *Westinghouse Elec. Corp. v. Callahan,* 105 Md.App. 25, 34, 658 A.2d 1112 (1995). The standard of review in this case is limited to "whether a reasoning mind reasonably could have reached the factual conclusion that the agency reached . . ." *Id.* at 421 [693 A.2d 378]. Upon review of the findings of fact of the Administrative Law Judge and the arguments of the parties, this Court finds that the factual conclusion and ensuing decision reached by the Administrative Law Judge in this case was proper.

This Court has not been persuaded that the decision of the Administrative Law Judge to reverse the five-day suspension of the Respondent was unreasonable and a conclu-

sion which the agency could not have reasonably reached. For these reasons, the Petitioner's 7–207 Petition is Denied this 12th day of September, 2000 and the decision of the Administrative Law Judge is upheld.

This appeal followed.

### Appellant's Right to Question Appellee About the Accusations Made Against Him

■ Judicial review of administrative action differs from appellate review of a trial court judgment. In the latter context the appellate court will search the record for evidence to support the judgment and will sustain the judgment for a reason plainly appearing on the record whether or not the reason was expressly relied upon by the trial court. However, in judicial review of agency action the court may not uphold the agency order unless it is *sustainable on the agencies findings and for the reason stated by the agency.*

*Baines v. Board of Liquor License,* 100 Md.App. 136, 143, 640 A.2d 232 (1994)(quoting *United Steelworkers v. Bethlehem Steel,* 298 Md. 665, 679, 472 A.2d 62 (1984))(emphasis added).

We hold that the ALJ's order is not sustainable on the ground that appellant failed to establish "why [appellee's] private behavior . . . affects the security of the EPRU."

■ The Department of Public Safety and Correctional Services "Standards of Conduct and Performance", II., K.4. provides:

An employee shall cooperate with a superior or other person designated to conduct an investigative procedure. An employee shall answer all questions truthfully and to the full extent of his or her knowledge due to security purposes.

The Administrative Law Judge recognized that there are situations in which the standard articulated in DCD 50–2II., K.4. would be applicable to an employee's off-duty conduct, but concluded that the Department had failed to establish that the off-duty conduct about which appellee was questioned is the kind of conduct that would pose a security threat to the

EPRU. That conclusion of law was wrong. The language of DCD 50–2II., K.4. is unambiguous.[3] The words clearly establish that the agency retains the authority to require employees respond to questions that fall within the scope of "security purposes." We conclude that the Department has a duty to investigate whether its correctional officers—while off duty as well as while on duty—abuse controlled dangerous substances and/or demonstrate a propensity for assaultive behavior. Correctional employees have a unique and demanding job. Allegations that a correctional officer has engaged in unstable or violent behavior, or that the officer uses narcotics, should be investigated thoroughly. An interview of the accused is an important component of any such investigation.

### The Conflict Between a Public Employer's Right to Question Its Employee and the Employee's Privilege Against Self–Incrimination

 [T]he [public employer] has a choice between either demanding a statement from an employee on job-related matters, in which case it can not use the statements in a criminal prosecution, or prosecuting the employee, in which case it cannot terminate the employee for refusing to give a statement. The [public employer] may demand that an employee give a statement on pain of dismissal even if the statement may tend to incriminate. An employee may then

---

**3.** When interpreting agency regulations, we "generally employ the same rules applicable to the interpretation of statutes." *Chesapeake v. Comptroller*, 331 Md. 428, 440, 628 A.2d 234 (1993). The aim of statutory construction is to determine and bring about the Legislature's intention. E.g., *Oaks v. Connors*, 339 Md. 24, 660 A.2d 423 (1995); *Baltimore v. Cassidy*, 338 Md. 88, 93, 656 A.2d 757 (1995). Legislative intent is discerned primarily by the language of the provision. *Tidewater v. Mayor of Havre de Grace*, 337 Md. 338, 345, 653 A.2d 468 (1995). Ultimately, "we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State*, 336 Md. 125, 137, 647 A.2d 106 (1994). The circuit court correctly interpreted the language in DCD 50–20II., K.4. to limit departmental inquiries of off duty conduct to questions involving the security of the facility. The circuit court erred, however, in finding that accusations of drug use and assaultive behavior do not have a potential effect on the security of the facility.

be fired either for refusing to give answers or on the basis of the answers which are given. However, the state may not use coerced answers in a criminal proceeding.

*United States v. Camacho,* 739 F.Supp. 1504, 1514–15 (S.D.Fla.1990)(citing *D'Acquisto v. Washington,* 640 F.Supp. 594, 622–23 (N.D.Ill.1986)).[4] It is true that "[t]he [Fifth] Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973). It is also true, however, that "given the important public interest in securing from public employees an accounting of their public trust[,] public employees may constitutionally be discharged for refusing to answer potentially incriminating questions concerning their official duties if they have not been required to surrender their constitutional immunity." *Lefkowitz v. Cunningham,* 431 U.S. 801, 806, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). A violation of the Fifth Amendment occurs only when there exists the combined risks of both compelling an employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers. *Harrison v. Wille,* 132 F.3d 679, 682 (11th Cir.1998); *Hill v. Johnson,* 160 F.3d 469, 471 (8th Cir.1998).

Appellant argues that this is not a case in which the employee was the subject of any criminal proceedings; thus the suspension was justified. According to appellant, "the *Garrity* line of decisions" governs the Fifth Amendment issue

---

4. *See also, Buckner v. Highland Park,* 901 F.2d 491, 496 (6th Cir.Mich.), *cert. denied,* 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990); *Blunier v. Board of Fire & Police Comm'rs,* 190 Ill.App.3d 92, 104–05, 137 Ill.Dec. 348, 545 N.E.2d 1363 (1989), *appeal denied,* 131 Ill.2d 557, 553 N.E.2d 393, 142 Ill.Dec. 879 (1990); *In re Jenkins,* 437 Mich. 15, 26, 465 N.W.2d 317, *rehearing denied,* 437 Mich. 1249 (1991); *Jones v. Franklin County Sheriff,* 52 Ohio St.3d 40, 44, 555 N.E.2d 940, *rehearing denied,* 53 Ohio St.3d 706, 558 N.E.2d 61 (1990).

presented in this appeal.[5] In *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the United States Supreme Court held that the Fifth Amendment is violated when public employees are given the choice of either forfeiting their jobs or incriminating themselves. Such a choice is "likely to exert such pressure upon an individual as to disable him from making a free and rational choice." *Id.* at 497, 87 S.Ct. 616. In *Garrity*, police officers were compelled under threat of termination to answer questions during a traffic-ticket "fixing" investigation. The *Garrity* Court concluded that the officers had been forced to choose between losing their jobs and incriminating themselves, therefore the statements were coerced, and that those coerced statements, "obtained under threat of removal from office," could not be used against them in a subsequent *criminal* proceeding. *Id.* at 500, 87 S.Ct. 616.

The Supreme Court has, however, recognized the right of a public employer to insist that its employees answer job-related questions. In *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), while holding that a police officer could not be fired for refusing to waive his Fifth Amendment privilege, the Supreme Court noted that:

> [i]f appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, the privilege against self-incrimination would not have been a bar to his dismissal.

*Id.* at 278, 88 S.Ct. 1913 (citation omitted).

Appellant argues that in any post-interview criminal prosecution, the exclusionary rule announced in *Garrity* would

---

5. *See Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); *Uniformed Sanitation Men Ass'n v. Commissioner of Sanitation*, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968); *Wiley v. Doory*, 14 F.3d 993, 996 (4th Cir.1994).

attach to whatever statements appellee made to an agent of his employer. That rule is applicable, however, only when the employee is ordered to answer the questions. Thus, the dispositive issue is whether Lt. Wetzel **demanded** that appellee answer the questions. In *Martin v. State*, 113 Md.App. 190, 686 A.2d 1130 (1996), this Court explained that, under the Law Enforcement Officer's Bill of Rights,[6] an officer facing criminal charges is entitled to suppression of only those statements that he or she was ordered to make:

> The objective fact that must be established before this prophylactic exclusionary rule is triggered is that the interrogating officer ordered the appellant to respond to the interrogation. Peripheral psychological pressures do not suffice. The subjective state of mind of the appellant is immaterial. As an historical fact, Lieutenant Schlossnagle either ordered the appellant to respond to the interrogation or he did not.

*Martin,* 113 Md.App. at 208, 686 A.2d at 1139. In *Martin,* the exclusionary rule provided for by the LEBOR was not applicable because the defendant-officer was never given a direct order to answer questions. Therefore his voluntary statement was admissible.[7] Although the LEBOR is not applicable to

---

**6.** The Law Enforcement Officer's Bill of Rights (LEBOR) provides in pertinent part:

> This subtitle does not prevent any law enforcement agency from requiring a law enforcement officer under investigation to submit to ... interrogations which specifically relate to the subject matter of the investigation. *This subtitle does not prevent a law enforcement agency from commencing any action which may lead to a punitive measure as a result of a law enforcement officer's refusal to submit to ... interrogation, after having been ordered to do so by the law enforcement agency. The results of any ... interrogation, as may be required by the law enforcement agency under this subparagraph are not admissible ... in any criminal proceedings against the law enforcement officer when the law enforcement officer has been ordered to submit thereto.* (Emphasis added).

Md. Ann.Code art. 27, § 728(b)(7)(ii)(1996).

**7.** On the issue of whether a statement is voluntary,

> [t]he ultimate test remains that which has been the only clearly established test in the Anglo American courts for two hundred years:

correctional officers, the reasoning behind the legislation and the *Martin* Court's interpretation of the exclusionary rule in the LEBOR are entirely consistent with our analysis.

■ "We cannot require public employees to speculate whether their statements will later be excluded under *Garrity.*" *Benjamin v. City of Montgomery,* 785 F.2d 959, 962 (11th Cir.), *cert. denied,* 479 U.S. 984, 107 S.Ct. 571, 93 L.Ed.2d 575 (1986). That is why the dispositive question is whether appellee was given a direct order by a superior officer to answer the questions asked of him.[8] The record in this case is unclear as to whether appellee was given a direct order to answer the questions. As this is a question of fact that must be resolved in the first instance by the Administrative Law Judge, we must remand the case with specific instructions that the ALJ determine whether appellee was issued a direct order to answer the potentially incriminating questions.[9]

If the ALJ is persuaded by a preponderance of the evidence that such an order was issued, then appellee's answers could not have been used in a subsequent criminal proceeding, and

---

the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, is his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Martin,* 113 Md.App. at 210, 686 A.2d 1130(citing *Arizona v. Fulminante,* 499 U.S. 279, 303, 111 S.Ct. 1246, 1261, 113 L.Ed.2d 302, 327 (1991); quoting *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)).

**8.** Appellant argues that appellee did not assert his privilege against self-incrimination. When a person wishes to assert his or her Fifth Amendment privilege against self-incrimination, there is no need to follow any ritualistic formula or specific terminology to invoke the right. *Quinn v. United States,* 349 U.S. 155, 160, 75 S.Ct. 668, 99 L.Ed. 964 (1955). Because a public employee can be disciplined for refusing to obey a lawful order that he or she answer a proper question, it is of no consequence whether appellee actually invoked his Fifth Amendment privilege when he refused to answer Lt. Wetzel's questions.

**9.** A direct order to answer a particular question is distinguishable from a request that the question be answered, even if the request is preceded or accompanied by notification that the agency's regulations include a requirement that the employee answer job related questions.

the Department was entitled to impose discipline for his refusal to answer. On the other hand, if the ALJ is not persuaded that appellee was given a direct order to answer the questions, because any statement he made would have been admissible against him in a subsequent criminal proceeding, appellee was essentially being punished for asserting his Fifth Amendment privilege against self incrimination, and his five day suspension must be reversed.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT WITH DIRECTIONS TO REMAND.**

**TO THE OFFICE OF ADMINISTRATIVE HEARINGS FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; EACH PARTY TO PAY 50% OF THE COSTS.**