854 A.2d 299

**OCEAN CITY POLICE DEPARTMENT**

v.

**Dale C. MARSHALL.**

**No. 1678, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

July 19, 2004.

**116**

Guy R. Ayres, III (Bruce F. Bright, Ayres, Jenkins, Gordy & Almand, P.A., on the brief), Ocean City, for Appellant.

Peter Ayers Wimbrow, III, Ocean City, for Appellee.

Panel: JAMES R. EYLER, BARBERA, and ROBERT F. FISCHER, (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

This appeal arises out of disciplinary action taken by the Ocean City Police Department, appellant, against Sergeant Dale Marshall, appellee, an officer in the department. On January 8, 2002, appellee apprehended a bank robber. Subsequently, he received notice that he was under investigation with respect to "actions prior to and after the capture."

Appellee appeared for scheduled interrogations on two occasions and refused to answer any questions because appellant would not provide him with additional information with respect to the nature of the complaint. Consequently, appellant, through its chief, sanctioned appellee for violating departmental rules on "Professional Courtesy" and "General Conduct/Courtesy," and suspended appellee from work for sixty-four hours without pay.

Appellee sought review of the decision in the Circuit Court for Worcester County. The circuit court, interpreting the provision in the Law Enforcement Officer's Bill of Rights (LEOBR), requiring that appellee be informed in writing of the "nature of the investigation" prior to interrogation, held that the notice provided by appellant was insufficient. Thus, the court held that the resulting discipline occurred in violation of the LEOBR.

We shall affirm the decision of the circuit court.

### Facts

In 2002, appellee had been working for appellant full time for 29 years. In 1980, he was promoted to Sergeant. On January 8, 2002, appellee was instrumental in apprehending a bank robber on 47th Street and the beach, in Ocean City. On April 24, 2002, appellee was asked to meet with Lt. Richard J. Currence (Lt. Currence), at which time he was given a "Notification to Accused of Complaint" (the Notification). The Notification was a printed form, with handwriting, as set forth below. The Notification provided:

> Be advised that a complaint has been lodged concerning a situation in which you were alleged to have been involved. The details of the complaint as they are known are as follows: *On January 8, 2002 you were involved in capture-ing [sic] a suspected bank robber. This occurred at 47th and the BEACH, O.C. M.D. Your actions prior to and after the capture have come into question.* You are further advised that other issues may arise concerning this complaint as the investigation progresses, at which time you will be informed as to their nature. * * * You have the right to

be represented by an attorney or any other responsible representative of your choice. Should you desire representation, advise your attorney or other representative of your interview. [*italics indicate handwriting*].

Lieutenant Currence asked appellee to sign the Notification, and appellee refused, stating: "I am not signing anything. I haven't done anything wrong." Appellee also stated that he was represented by counsel, whom he identified as Damon Trazzi. Appellee referenced a worker's compensation claim previously filed by him and stated that he told his attorney "when we started" that the "Mayor and Council would try something." Apparently, Mr. Trazzi represented appellee with respect to the worker's compensation claim, and appellee believed that the investigation was somehow related to the filing of that claim. Lieutenant Currence wrote on the form that appellee refused to sign, and scheduled an interrogation date for May 22, 2002. Appellee indicated that he intended to call his attorney the following day.

At the interrogation on May 22, 2002, appellee said he had been unable to contact his attorney, and the interrogation was rescheduled for May 29, 2002, so that appellee could obtain representation. Appellee was informed that the interrogation would go forward on May 29th, with or without counsel.

On May 26, 2002, appellee wrote a memo to Lt. Currence advising that he had spoken to Mr. Trazzi the day before. Appellee stated that Mr. Trazzi would not take the case because he did not know enough about the LEOBR, and Mr. Trazzi suggested he seek advice from another attorney. Appellee then gave Lt. Currence the name of another attorney whom he planned to contact.

On May 27th, appellee contacted Peter Wimbrow, III, an attorney, and scheduled a meeting with him on May 29th at 10:30 a.m. On May 29, the day of the interrogation, appellee sent a memo to Lt. Currence, stating that he could not make the interrogation because his attorney could not meet before that time. Lieutenant Currence ordered appellee to appear, via police radio. Appellee did so but refused to answer any

questions without his attorney present, even though Lt. Currence ordered him to answer. Appellee received a Reprimand and Disciplinary Action Report as a result of the May 29th meeting. The report recited a violation of departmental rules relating to courtesy and general conduct, for failing to answer questions, and suspended appellee without pay for sixty-four hours.

After appellee met with Mr. Wimbrow, Mr. Wimbrow sent a letter, dated May 29, 2002, to Lt. Currence, advising him that appellee would appear for an interrogation if appellee were advised of the allegations against him. Lt. Currence responded by letter, dated June 4, 2002, stating that charging documents had been prepared for failure to submit to the May 29 interrogation. The letter advised that another interrogation had been scheduled for June 19, 2002, but declined to provide additional information. Appellee's counsel replied by letter dated June 11th and requested that the interrogation be scheduled for the afternoon of June 19, as he had a court appearance scheduled for the morning or, in the alternative, rescheduled for any other morning of that week. The request was granted, and it was scheduled for the afternoon.

On June 19, 2002, appellee appeared for the interrogation, with counsel, and once again refused to answer any questions. Subsequently, appellee received another Reprimand and Disciplinary Action Report. The report recited a violation of the same departmental rules, for failing to answer questions on June 19, and reduced appellee's rank from sergeant to police officer, first class.

Pursuant to appellee's request for a hearing, a three member hearing board was formed. The board held a hearing on August 9, 2002. Appellee was represented by counsel. Evidence was presented by stipulation of the parties. Following the hearing, the hearing board found that appellee had wrongfully refused to submit to interrogation on both days, May 29 and June 19, and upheld all charges, but recommended that appellee be disciplined by suspending him without pay for 8

days. Appellant, acting through its chief, accepted the recommendation.

On October 28, 2002, appellee filed a petition for judicial review in circuit court. After a hearing on August 18, 2003, the circuit court issued a written opinion and order dated September 9, 2003, reversing appellant's decision. The circuit court held that appellee had not been given sufficient information about the nature of the investigation, in violation of the LEOBR. Appellant noted this timely appeal.

### Questions Presented

Appellant presents the following questions on appeal:

I. Whether the trial court erred in finding that [appellee] was not "informed in writing of the nature of the investigation prior to . . . interrogation."

II. Whether the trial court erred in finding that [appellee] had been disciplined "by reason as exercise of or demand for the rights granted him," in violation of the Law Enforcement Officer's Bill of Rights.

### Standard of Review

The Court of Appeals recently addressed the standard of review, in a similar situation, in *Coleman v. Anne Arundel County Police Dept.:*

> No statute expressly establishes the scope of judicial review of an administrative proceeding initiated by a county police department pursuant to the LEOBR. *See Montgomery County v. Stevens,* 337 Md. 471, 482, 654 A.2d 877 (1995); *Younkers v. Prince George's County,* 333 Md. 14, 17, 633 A.2d 861 (1993)(noting that unlike the scope of review established under the State Administrative Procedure Act (APA) when a state police agency is involved, Md. Code (1984, 1993 Repl. Vol., 1993 Cum. Supp.), *State Government Art.,* §§ 10–201–10–226, the LEOBR is silent as to a specified scope of judicial review in a disciplinary action involving a county police officer). We have concluded that the scope of judicial review in a LEOBR case "is that generally

applicable to administrative appeals." *Stevens,* 337 Md. at 482, 654 A.2d 877 (quoting *Younkers,* 333 Md. at 17, 633 A.2d 861). Thus, to the extent that the issue under review turns on the correctness of an agency's findings of fact, judicial review is narrow. It is " 'limited to determining if there is substantial evidence' in the administrative record as a whole 'to support the agency's findings and conclusions ...' " *Id.* (quoting *United Parcel v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226, (1994)). *See also Younkers,* 333 Md. at 18–19, 633 A.2d 861; *Meyers [v. Montgomery County Police Dept.],* 96 Md.App. [668] at 708–09, 626 A.2d 1010. While "an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts," *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 69, 729 A.2d 376 (1999), "we owe no deference to agency conclusions based upon errors of law." *State Ethics v. Antonetti,* 365 Md. 428, 447, 780 A.2d 1154 (2001). *See Belvoir Farms Homeowners Ass'n, Inc. v. North,* 355 Md. 259, 267, 734 A.2d 227(1999); *Catonsville Nursing Home, Inc. v. Loveman,* 349 Md. 560, 569, 709 A.2d 749 (1998). 369 Md. 108, 121–22, 797 A.2d 770 (2002).

 When this Court reviews an administrative decision, we perform precisely the same role as the circuit court. *Stover v. Prince George's County,* 132 Md.App. 373, 380–81, 752 A.2d 686 (2000) (citing *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–304, 641 A.2d 899 (1994)). We look only at "the decision of the agency, not that of the circuit court." *Lucas v. People's Counsel for Baltimore County,* 147 Md.App. 209, 225, 807 A.2d 1176 (2002) (citing *Carriage Hill–Cabin John, Inc. v. Maryland Health Resources Planning Comm'n,* 125 Md.App. 183, 211, 724 A.2d 745 (1999)). Ordinarily, a reviewing court is constrained to affirm the agency decision only for the reasons given by the agency. *See United Steelworkers of America v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984) (citing *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962)) ("[A] simple but

fundamental rule of administrative law ... is ... that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); *accord SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Eastern Outdoor Adver. Co. v. Mayor & City Council of Baltimore,* 128 Md.App. 494, 516, 739 A.2d 854 (1999). Where it is a pure question of law, however, "the reviewing court 'may substitute its judgment for that of the [administrative agency].'" *Miller v. Board of Educ.,* 114 Md.App. 462, 466, 690 A.2d 557 (1997) (citing *Gray v. Anne Arundel County,* 73 Md.App. 301, 309, 533 A.2d 1325 (1987)).

## Discussion

We find it helpful to begin our analysis with a review of the relevant provisions of the LEOBR, currently codified at Md. Code, Public Safety, § 3–101 *et seq.,* and derived without substantive change, to the extent relevant here, from former Md. Code (1957, 1996 Repl. Vol.), Article 27, §§ 727–734D. The provision governing this case is former Article 27 § 728(b)(5)(i). Section 728, in pertinent part, provided:

Right to engage in political activity; investigation or inter-rogation of officer; officer's right to sue; adverse material in the officer's file. * * * (b) Procedure to be followed at interrogation or investigation; record; representation by counsel; statute or regulation abridging right to sue; inser-tion of adverse material into officer's file; chief under investigation; polygraph examination.—Whenever a law en-forcement officer is under investigation or subjected to interrogation by a law enforcement agency, for any reason which could lead to disciplinary action, demotion or dismiss-al, the investigation or interrogation shall be conducted under the following conditions: * * * (5)(i)The law enforce-ment officer under investigation shall be informed in writing of the nature of the investigation prior to any interrogation.

The relevant language currently appears at Md. Code, Public Safety, § 3–104(d)(2) and provides:

Investigation or interrogation of law enforcement officer. * * * (d) Disclosures to law enforcement officer under investigation.—* * * (2) Before an interrogation, the law enforcement officer under investigation shall be informed in writing of the nature of the investigation.

The new language became effective Oct. 1, 2003.

Article 27, Section 728(b) governs the conduct of investigations and interrogations, whenever a law enforcement officer is under investigation or subjected to interrogation by a law enforcement agency, "for any reason which could lead to disciplinary action, demotion or dismissal." Subsection (b)(5)(i) requires that the officer be informed of the "nature of the investigation" prior to any interrogation. Upon completion of the investigation, the officer shall be informed of all charges, specifications, and witnesses and shall be given a copy of the investigatory file and any exculpatory information. Section 728(b)(5)(ii) and (iii). An officer is entitled to be represented by counsel during interrogation, and counsel has the right to object to any question. Section 728(b)(10)(i) and (ii). A law enforcement agency may require an officer to submit to interrogations which relate to the subject matter of the investigation, and a refusal to submit may lead to a punitive measure. The results of any such interrogation that occurs, however, are not discoverable or admissible in any subsequent criminal proceeding. Section 728(b)(7)(ii). If the investigation results in the recommendation of punitive action against the officer, the officer has the right to a hearing before a hearing board. Section 730 (now Public Safety section 3-107) governs the conduct of that hearing.

### The Purpose of LEOBR

Although the LEOBR has undergone a number of revisions since its enactment in Maryland in 1974, its purpose remains constant, "... to guarantee law enforcement officers certain procedural safeguards during any investigation and subsequent hearing which could lead to disciplinary action, demotion, or dismissal." *City of Hagerstown v. Moats*, 81 Md.App. 623, 624-25, 568 A.2d 1181 (1990) (citations omitted). "The

legislative scheme of the LEOBR is simply this: any law-enforcement officer covered by the Act is entitled to its protection during any inquiry into his conduct which could lead to the imposition of a disciplinary sanction." *Coleman*, 369 Md. at 122, 797 A.2d 770 (quoting *DiGrazia v. County Executive for Montgomery County*, 288 Md. 437, 452–53, 418 A.2d 1191 (1980)). The LEOBR grants "extensive rights to law enforcement officers that are not available to the general public" because "the nature of the duties of police officers [are] different from that of other public employees." *Coleman*, 369 Md. at 122, 797 A.2d 770 (quotations and citations omitted).

As a law enforcement officer, appellee is entitled to the protections of the LEOBR, including notice and the right to a hearing before punitive action is taken against him. *See Maryland State Police v. Zeigler*, 330 Md. 540, 553, 625 A.2d 914 (1993); *see also Blondell v. Baltimore City Police Dept.*, 341 Md. 680, 672 A.2d 639 (1996).

### *Sufficiency of the Notice*

Our analysis is not concerned with the merits of the complaint that resulted in the requested interrogation of appellee. In fact, the record does not reveal any information about that complaint other than that contained in the Notification. Rather, we must determine whether the Notification provided appellee with sufficient notice of the "nature of the investigation."

As there is no reported Maryland case addressing this issue, we begin with the basic principles of statutory construction. The Court of Appeals stated the principles succinctly, in the context of the LEOBR, in *Blondell v. Baltimore City Police Dept.:*

> In construing the LEOBR provisions at issue in this case, we apply the paradigm of statutory construction developed in numerous decisions of this Court. As we have often stated, the cardinal rule of statutory construction is to ascertain and effectuate the legislative intention. The pri-

mary indicator of the Legislature's intent is the language of the statute. We interpret statutes to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant. In addition, we construe the statute as a whole, interpreting each provision of the statute in the context of the entire statutory scheme. If the statutory language, read in its entirety, is clear and unambiguous, and comports with the Legislature's purpose, we need not inquire further to discern the statute's meaning.

341 Md. 680, 690–91, 672 A.2d 639 (1996) (internal citations and quotations omitted).

Appellant argues that, absent specific guidance, common sense governs the analysis and leads to the conclusion that the Notification provided sufficient notice. Otherwise, in order to interrogate a police officer who is the subject of an investigation, the police officer must be actually charged or given detailed notice of the allegations against him before a police department may properly interrogate him. According to appellant, interpreting the statute to require disclosure of the charges before a determination of whether or not to bring charges leads to an irrational result and goes beyond any reasonable interpretation of the language "nature of the investigation."

Appellant further explains that if the General Assembly had intended such disclosure be required, it would have used the language "nature of the allegations" or "nature of the charges" rather than "nature of the investigation." Finally, appellant asserts that "[t]o require more information regarding the specific allegations of wrongdoing would be tantamount to requiring the police department to 'show its hand' at the outset of the investigation, before it had an opportunity to obtain unvarnished answers to questions from Appellee."

Appellee reminds us that the purpose of the LEOBR is to protect law enforcement officers from being blind-sided by the nature of an investigation and to afford the opportunity to

make an informed decision as to whether or not to secure representation at the interrogation.

As previously indicated, there is no reported Maryland case on point. As the circuit court observed, in the reported cases addressing other issues under the LEOBR, more information was in fact provided to the officer in question than was provided in this case. *See, e.g., Martin v. State,* 113 Md.App. 190, 203, 686 A.2d 1130 (1996) (sexual assault claim by a female against a male officer); *Dept. of Public Safety & Corre. Servs. v. Shockley,* 142 Md.App. 312, 316, 790 A.2d 73 (2002) (a female complained that a male officer threatened to "whip her" and that the officer used narcotics); *Montgomery County v. Krieger,* 110 Md.App. 717, 737, 678 A.2d 621 (1996) (officer damaged fuel pump nozzle at a specific time and place); *Nichols v. Baltimore Police Department,* 53 Md.App. 623, 624, 455 A.2d 446 (1983) (officer observed apparent drug transaction and shirked his responsibilities); and *Abbott v. Administrative Hearing Board,* 33 Md.App. 681, 684, 366 A.2d 756 (1976) (officer accused of unsatisfactory performance in contact with a suspect and with improper discharge of a firearm).

Those cases do not aid us, however. Because the issue of sufficiency of notice has not been the subject of a reported opinion in Maryland, we have no examples, under Maryland law, of what constitutes legally sufficient or legally insufficient notice.

In the early 1970's, various bills were introduced into Congress in an effort to enact a federal law enforcement officer's bill of rights. That effort was unsuccessful, but Maryland is one of a few states that have enacted such a law. See Warnken, *The Law Enforcement Officers' Privilege Against Compelled Self–Incrimination,* 16 U. Balt. Law Review 452 (1987).

At the time of Professor Warnken's article, only Maryland, California, Florida, and Virginia had enacted such a law. Our research has disclosed that additional states now have such legislation. The states with statutory reference to the provision comparable to article section 728(b)(5)(i), are as follows:

Arkansas,[1] California,[2] Delaware,[3] Florida,[4] Louisiana,[5] Rhode Island,[6] Virginia,[7] and Wisconsin.[8] The applicable statute in each of these states requires disclosure of the "nature of the investigation," the same as the Maryland statute, except the statute in Rhode Island. The Rhode Island statute requires "the nature of the charges . . . and, if known, the date(s) of the alleged offense(s)." R.I. Gen. Laws section 42–28.6–4(b).

We have found only one case interpreting the relevant provision in any of the above states. The Louisiana statute, which mirrors the language of the Maryland LEOBR, was interpreted in *Knight v. Dept. of Police,* 619 So.2d 1116 (La.App.1993). In *Knight,* Captain Lorenza Knight was ordered into involuntary retirement for racist remarks made during a phone conversation with a subordinate while on duty. 619 So.2d at 1117. Knight argued that the investigation violated his statutory rights under the police officers' bill of rights, Louisiana Statutes Annotated R.S. 40:2531 *et seq.* The Louisiana statute, like Maryland, requires that the law enforcement officer under investigation be informed of "the nature of the investigation" at the commencement of the interrogation. *Id.* at 1118. Knight argued that he was not informed of the charges. *Id.* The Court found that Knight need not be informed of the exact formal charges against him and that the nature of the investigation was sufficiently conveyed by the comment: "The nature of this investigation is your alleged conversation with Officer John Reilly of the

---

1. Ark. Code Ann. § 14–52–303(3)(A) (LEXIS L. Publg. 2003).

2. Cal. Gov. Code § 3303(c) (West 2004).

3. Del. Code Ann. tit. 11, § 9200 (2003).

4. Fla. Stat. § 112.532 (2004).

5. La. Stat. Ann. § 40:2531(B)(1) (2001).

6. R.I. Gen. Laws § 42–28.6–4(b) (2003).

7. Va. Code Ann. § 9.1–501(2003).

8. Wis. Stat. Ann. § 164.02 (2003).

Command Desk when you [made racist remarks] several times during that conversation." *Id.* The Court reasoned that the statute "does not require that the law enforcement officer know the exact charges that may be brought against him. All that is required is that the investigating agency inform the police officer of 'the nature of the investigation.' " *Id.*

Considering the purpose of the LEOBR and interpreting the language in question, we conclude that the Notification, in the case before us, was legally insufficient. The question as to what constitutes sufficient notice of the nature of the investigation must be determined on a case by case basis. It does not necessarily require that all known detail or the exact charges be disclosed, but it must advise the officer as to the *nature* of the investigation, not just the existence of an investigation. In the case before us, mindful of our deferential standard of review, there was no information provided as to the nature of the investigation, and thus, the notice was insufficient as a matter of law.

The Notification advised appellee that there was a complaint "concerning a situation" in which he was involved. The explanation indicated that the conduct in question occurred before and after the capture of a suspected bank robber on January 8, 2002. The Notification did not indicate how long before or how long after the capture the conduct in question occurred. The Notification does not indicate where the conduct occurred. It does not indicate whether the complaint related to on duty or off duty conduct. There is no indication of any alleged wrongdoing before, during, or after the capture. The result is that appellee was left to speculate whether the complaint related to his apprehension of the suspect, whether it was criminal or non-criminal, whether it related to physical conduct or administrative actions, when and where it occurred, and under what circumstances. In short, the nature of the investigation was not disclosed.

Appellee had a right to counsel, but that right was compromised under the circumstances here. Had the interrogation gone forward, there was insufficient information for counsel to

consult meaningfully with appellee and to make an intelligent decision whether and when to object, or even to determine whether a particular question was sufficiently related to the subject matter of the investigation to be a proper question. See Article 27, § 728(b)(7)(ii)(an officer may be required to submit to interrogations "which specifically relate to the subject matter of the investigation," and if ordered to do so, the results are not discoverable or admissible in any criminal proceedings against the officer); *Martin*, 113 Md.App. at 203, 686 A.2d 1130 (in order to have protection against self-incrimination, the officer must be ordered to answer questions related to the interrogation).

For the forgoing reasons, the Notification was insufficient to comply with the LEOBR notice requirement since it did not provide information concerning the "nature" of the investigation. Accordingly, appellant erred in disciplining appellee.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**